Argued and submitted April 25, 2013, reversed and remanded on Count 1 and
Count 3, remanded for resentencing, otherwise affirmed March 18, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LUIS VALERIO,
*Defendant-Appellant.*

Washington County Circuit Court
C100792CR; A148005

346 P3d 498

Eric R. Johansen, Senior Deputy Public Defender, argued
the cause for appellant. With him on the brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the
cause for respondent. With him on the brief were Ellen F.
Rosenblum, Attorney General, and Anna M. Joyce, Solicitor
General.

Before Duncan, Presiding Judge, and Nakamoto, Judge,
and Schuman, Senior Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

In this criminal case, defendant appeals, assigning error to the trial court's jury instruction on accomplice liability. The instruction informed the jury that a defendant who aids or abets another person in the commission of a crime with the intent to promote or facilitate the crime is criminally liable not only for the crime, but also for any other crimes that were committed as a "natural and probable consequence" of the crime. Defendant argues that, under *State v. Lopez-Minjarez*, 350 Or 576, 260 P3d 439 (2011), the "natural and probable consequences" instruction was erroneous. The state does not dispute that the instruction was erroneous, but argues that defendant did not preserve his challenge to the instruction and that the instruction did not prejudice defendant. For the reasons explained below, we conclude that (1) defendant preserved his challenge to the instruction, (2) the instruction was erroneous, and (3) the instruction prejudiced defendant with respect to two of the five charged crimes (specifically, Counts 1 and 3), but not with respect to the other three charged crimes (specifically, Counts 2, 4, and 5).[1] Therefore, we reverse and remand the judgment on Counts 1 and 3, remand for resentencing, and otherwise affirm.

We begin our discussion with a description of the procedural facts and the evidence and arguments that the parties presented at trial. The state charged defendant with five crimes: attempted murder, ORS 163.115 (Count 1); first-degree robbery, ORS 164.415 (Count 2); second-degree assault, ORS 163.175 (Count 3); second-degree robbery, ORS 164.405 (Count 4); and unlawful use of a weapon (UUW), ORS 166.220 (Count 5). Defendant pleaded not guilty to all of the charges, and the case was tried to a jury.

At trial, the complainant, Barrett, testified that, at approximately 11:30 p.m. on the date of the alleged crimes, he was walking and carrying a cup of coffee when two men

---

[1] Defendant also argues that the trial court's instruction violated his Sixth and Fourteenth Amendment rights under the United States Constitution. Because we conclude that, under *Lopez-Minjarez*, the trial court erred in giving the instruction, and that the error prejudiced defendant, we do not address defendant's federal claims.

stopped him and demanded his money and cell phone. One man had a knife and told Barrett that he would "shank [him] if [he] moved or did anything." The other man put his hand in Barrett's pocket and took Barrett's cell phone. Barrett dropped his coffee and pushed both men back. The man who had taken Barrett's cell phone punched Barrett in the face, and the man with the knife stabbed Barrett in the chest. Barrett fled, called 9-1-1, and was taken to the hospital for treatment of the knife wound, which was closed with seven staples.

When interviewed by the police, Barrett reported that the man who had taken his phone and punched him was wearing a blue jacket and a bandana and the man who had stabbed him was wearing a brown jacket.

A detective, Louka, testified that, shortly after the robbery, he asked Barrett's cell phone service provider to track the location of Barrett's phone. Around noon the next day, police officers used information about the phone's location to stop two men: defendant and Reyes-Gutierrez. At the time of the stop, defendant had a knife and Reyes-Gutierrez had Barrett's phone.

Another detective, Hegland, testified that, a few hours after the police officers stopped defendant and Reyes-Gutierrez, he showed Barrett eight photographs, including one of defendant. Barrett did not identify defendant as either one of the robbers.

At trial, Barrett identified defendant as the man who had stabbed him. But, when shown a photograph that police found on defendant's phone that had been taken hours before the robbery, in which defendant was wearing a plaid jacket and a bandana, Barrett testified that "it looked like that guy who punched me was wearing that."

The state's primary theory at trial was that defendant was the man who had stabbed Barrett. But, after Barrett had testified that the jacket and bandana that defendant was wearing in the photograph looked like the jacket and bandana worn by the man who had punched him, the prosecutor requested an instruction on accomplice liability

and referred to that instruction in his closing argument, stating:

> "Aid and abet. You know, you may wonder. You may say, Hmm, that bandana and that coat was on the guy who punched him. Maybe. Or maybe it was [defendant] and Mr. Barrett got it mixed. *But the fact of the matter is, if you determine that [defendant] was there and he's acting with another person in the commission of this crime, then the act of one becomes the act of all. If you assist by act the commission of the crime, then you are just as guilty.*
>
> "If there's only one knife and only one person can use it but you're acting together in the commission of the crime, then you're both guilty. If there's only one knife in the robbery that can be threatened but you're acting together, then you might as well be holding the knife, too, because you're just as guilty.
>
> "That's what that instruction means. It means that if you're acting together in the commission of any offense, the least degree of concert or collusion to a criminal act makes the act of one the act of all."

(Emphasis added.) Defendant objected to the prosecutor's argument, and the trial court overruled the objection.

The trial court instructed the jury on accomplice liability as follows:

> "A person aids or abets another person in the commission of a crime if the person, one, with the intent to promote or make easier the commission of the crime; two, encourages, procures, advises or assists by act or advice the planning or commission of the crime. *A person who aids or abets another in committing a crime, in addition to being criminally responsible for the crime that is committed, is also criminally responsible for any acts or other crimes that were committed as a natural and probable consequence of the planning, preparation or commission of the intended crime."*

(Emphasis added.)

Defendant took exception to the "natural and probable consequences" portion of the instruction, asserting that it impermissibly allows a jury to convict a defendant of a crime committed by another person without finding that the defendant had the specific intent to promote or facilitate that crime. The jury convicted defendant of all five counts.

On appeal, defendant argues that the trial court committed reversible error by giving the "natural and probable consequences" instruction. In response, the state argues that defendant did not preserve his challenge to the instruction and that the instruction did not prejudice defendant.

We first turn to the state's preservation argument. The state argues that defendant did not preserve his challenge to the instruction because he did not comply with the requirements of ORCP 59 H, which provides, in part,

> "A party may not obtain appellate review of an asserted error by a trial court *** in giving or refusing to give an instruction to a jury unless the party seeking review identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury."[2]

In the state's view, ORCP 59 H requires a party to "identify the error to the trial court *before* it instructs the jury *and* except to the error immediately *after* the court gives its instructions." (Emphasis added.) The state contends that, because defendant did not object to the instruction before it was given, he failed to comply with ORCP 59 H, even though he took exception to the instruction after it was given. The state's argument is unavailing because, as the state acknowledges, we rejected the same argument in *State v. Frey*, 248 Or App 1, 6-7, 273 P3d 143 (2012), *rev den*, 354 Or 814 (2014). The state contends that *Frey* was wrongly decided and requests that we reconsider it. We decline to do so. Moreover, the Supreme Court has since held that compliance with ORCP 59 H is not necessary to preserve an argument for appellate review. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) ("ORCP 59 H does not govern preservation of instructional error."). The state does not contend that defendant's exception to the instruction, in which he objected to the instruction and specified his reason for doing so, failed to satisfy the purposes of the preservation requirement. Nor would that argument have prevailed, given defendant's objection.

---

[2] ORCP 59 H has been amended since defendant's trial. However, the changes are not pertinent to our analysis and, thus, we quote the rule in its current form.

Having concluded that defendant preserved his challenge to the instruction, we turn to the merits of his challenge. Defendant argues that the trial court erred in giving the "natural and probable consequences" instruction because, as the Supreme Court held in *Lopez-Minjarez*, the instruction misstates the law of accomplice liability, which is governed by ORS 161.155. That statute provides, in pertinent part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

ORS 161.155.

Under ORS 161.155, a person can be criminally liable for aiding or abetting in a crime committed by another only if the person has the specific intent to promote or facilitate the crime. *Lopez-Minjarez*, 350 Or at 582. The "natural and probable consequences" instruction misstates the law because it provides that a person who aids or abets in the commission of a crime with the intent to promote or facilitate the crime is liable not only for the crime, but also for any other crimes that are natural or probable consequences of the crime. *Id.* at 583. The instruction "builds on accomplice liability, but goes beyond it[,]" in that it provides that a person is liable for "any naturally consequential crime, without regard to whether the defendant acted with the intent that ORS 161.155 requires." *Id.* "Put simply, Oregon law does not give rise to criminal liability on such a theory. Accomplice liability is both created by and limited by ORS 161.155." *Id.* Thus, in this case, as in *Lopez-Minjarez*, the giving of the "natural and probable consequences" instruction was error.

Having concluded that the giving of the instruction was error, we turn to the question of whether it was reversible error. The giving of a jury instruction constitutes reversible

error if the instruction, when viewed in the context of the jury instructions as a whole, could have created an erroneous impression of the law that could have affected the jury's verdict. *Lopez-Minjarez*, 350 Or at 585. When, as here, our task is to determine whether the giving of the "natural and probable consequences" instruction could have affected the jury's verdict, we must determine whether, in light of the parties' evidence and arguments, "the jury's guilty verdict on one or more of the charges could have been based on the theory of criminal responsibility contained in the erroneous instruction." *Id.* In other words, for each charged crime, we must determine whether the jury could have found the defendant guilty of the crime on the theory that the crime was a natural and probable consequence of an earlier crime in which the defendant had aided or abetted.

Therefore, as a threshold matter, we must identify the first crime, chronologically, for which the jury could have found defendant guilty on an accomplice liability theory. *Id.* ("[T]o trigger criminal responsibility under the erroneous instruction, the jury first had to find defendant guilty of at least one predicate crime on an accomplice (*i.e.*, aiding and abetting) theory.").

Defendant was charged with (1) attempted murder, for attempting to kill Barrett by stabbing him; (2) first-degree robbery, for robbing Barrett and using or attempting to use the knife to do so; (3) second-degree assault, for causing physical injury to Barrett by stabbing him; (4) second-degree robbery, for robbing Barrett while being aided by another person actually present; and (5) UUW for carrying or possessing a knife with the intent to use it unlawfully against another person. All of the crimes, except the second-degree robbery, involved the knife. Therefore, if the jury believed that defendant and Reyes-Gutierrez robbed Barrett and Reyes-Gutierrez was the robber with the knife, it would have had to rely on an accomplice liability theory to convict defendant of those crimes.

Defendant argues that the first crime, chronologically, for which the jury could have found him guilty on an accomplice liability theory is the UUW. As we understand it, defendant's argument is that the jury could have found

that he and Reyes-Gutierrez made a plan to commit a robbery and that he encouraged Reyes-Gutierrez to carry a knife for use during the robbery, thereby aiding and abetting in Reyes-Gutierrez's commission of UUW. From there, defendant argues, the jury could have relied on the "natural and probable consequences" instruction to find defendant guilty of the four subsequent crimes, regardless of whether defendant specifically intended to promote or facilitate those crimes.

Defendant does not explain, and we cannot discern, how the jury could have found that defendant aided and abetted in the UUW, unless it first found that defendant intentionally acted in concert with Reyes-Gutierrez to rob Barrett at knifepoint. To explain: There is no direct evidence regarding the planning of the robbery; therefore, in order to make any findings regarding the planning of the robbery, the jury would have to make findings about how the robbery was committed and then draw inferences about whether the robbery was planned and, if so, how. Assuming, for the sake of argument, that a jury could find, on this record, that defendant and Reyes-Gutierrez made a plan to commit a robbery and that, in the planning process, defendant encouraged Reyes-Gutierrez to carry a knife for use during the robbery, the finding would have to be premised on a finding that defendant and Reyes-Gutierrez carried out their plan, that is, that they acted together to intentionally rob Barrett at knifepoint. Such a finding would render the giving of the "natural and probable consequences" instruction harmless as to the first-degree robbery and second-degree robbery counts because the jury would have found that defendant had the specific intent to commit the robberies. Thus, even assuming that the UUW is the first crime for which the jury could have found defendant guilty on an accomplice liability theory, the giving of the instruction was harmless with respect to the two robbery counts.[3]

---

[3] The giving of the instruction was harmless with respect to the second-degree robbery count for an additional reason: the jury could not have legally found defendant guilty of that count on an accomplice liability theory. As mentioned, the second-degree robbery count alleged that defendant committed robbery while being aided by another person actually present. Given that the evidence was that there were only two robbers, defendant could not have been convicted as an aider or abettor because, under ORS 161.165, "a person is not

The question thus becomes whether the instruction was harmless with respect to the attempted murder and second-degree assault counts. Defendant argues that the instruction was not harmless as to those counts because, at a minimum, the jury could have found that he aided or abetted in the robberies and then relied on the instruction to find him guilty of the attempted murder and second-degree assault counts without finding that he specifically intended to aid or abet in those crimes.

On that issue, *State v. Fernandez*, 245 Or App 287, 262 P3d 1167 (2011), is instructive. In *Fernandez*, the defendant and his brother were in a car when they saw two men. The defendant got out of the car, pointed a gun at the men, and demanded their money. At the same time, the defendant's brother got out of the car, carrying a knife. A fight ensued, and the defendant's brother stabbed one of the men, causing serious physical injury. The state charged the defendant with attempted murder, first-degree assault, two counts of first-degree robbery, and felon in possession of a firearm. The attempted murder and first-degree assault counts were based on the stabbing, and the state's theory was that the defendant had aided and abetted in the stabbing. The trial court instructed the jury on accomplice liability, using the "natural and probable consequences" instruction, and the jury convicted the defendant of all the charged crimes. *Id.* at 289-90. The defendant appealed, arguing that the trial court erred in giving the instruction and that the error prejudiced him with respect to the attempted murder and first-degree assault counts. We agreed and reversed and remanded, explaining:

> "The 'natural and probable consequences' theory of accomplice liability permitted the jury to find defendant guilty of assault and attempted murder even if he did not intend to promote or facilitate the stabbing, as long as the stabbing

criminally liable for conduct of another constituting a crime if *** [t]he crime is so defined that the conduct of the person is necessarily incidental thereto." *See also State v. Merida-Medina*, 221 Or App 614, 619-620, 191 P3d 708 (2008), *rev den*, 345 Or 690 (2009) (holding that, where the defendant was charged with third-degree assault for an assault committed "[w]hile being aided by another person actually present," and there were only two persons involved in the commission of the assault, the defendant could not be convicted of the assault on an accomplice liability theory (internal quotation marks omitted)).

was a natural and probable consequence of any other predicate criminal act that defendant had aided in committing. In this case, based on the instruction, the jury was free to base accomplice liability for the assault and attempted murder on the conclusion that the stabbing was a natural and probable consequence of the robbery, without finding that defendant intended to promote or facilitate the stabbing."

*Id.* at 291.

Following *Fernandez*, we conclude that the giving of the "natural and probable consequences" instruction in this case was not harmless with respect to the attempted murder and second-degree assault counts. As in *Fernandez*, if the jury found that defendant had aided or abetted in the robbery at knifepoint, it could have then found defendant guilty of the attempted murder and second-degree assault counts by reasoning that those crimes were natural and probable consequences of the robbery, without determining whether defendant actually intended to aid or abet in those more serious crimes. Therefore, as in *Fernandez*, we are required to reverse and remand the trial court's judgment on those counts.

Reversed and remanded on Count 1 and Count 3; remanded for resentencing; otherwise affirmed.