Argued and submitted May 12, 2015, affirmed on appeal and cross-appeal
February 1, 2017

ANTHONY SCOTT GARNER,
*Petitioner-Appellant*
*Cross-Respondent,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent*
*Cross-Appellant.*

Marion County Circuit Court
08C21353; A154285

389 P3d 1143

Ryan T. O'Connor argued the cause and filed the briefs
for appellant-cross-respondent. With him on the combined

reply and answering brief was O'Connor Weber LLP. Anthony Scott Garner filed a supplemental brief *pro se.*

Peenesh H. Shah argued the cause for respondent-cross-appellant. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## HADLOCK, C. J.

Petitioner was convicted of two counts of aggravated murder and sentenced to life imprisonment without the possibility of parole. On direct appeal, we reversed the conviction on one of those counts and remanded for entry of a corrected judgment reflecting a conviction on a single count of aggravated murder. *State v. Garner*, 194 Or App 268, 279, 94 P3d 163, *rev den*, 337 Or 616 (2004) (*Garner I*). After an unsuccessful appeal from the judgment on remand, petitioner sought post-conviction relief, which the court granted in part and denied in part. Two aspects of that ruling are pertinent here. First, the post-conviction court rejected petitioner's claim that his appellate lawyer in the underlying criminal case performed inadequately by not assigning error to the criminal trial court's mid-trial dismissal of a juror. Second, the post-conviction court granted relief on a different claim of inadequate assistance of appellate counsel, determining that competent counsel would have sought reconsideration of our opinion in *Garner I* on the ground that we should have remanded the entire case for resentencing, instead of simply remanding for entry of a corrected judgment. Both petitioner and defendant, Superintendent of the Oregon State Penitentiary, have appealed from the resulting post-conviction judgment. For the reasons set out below, we affirm on appeal and on cross-appeal.

The facts are largely undisputed. Petitioner was charged with two counts of aggravated murder for killing a person in 1998. *Garner I*, 194 Or App at 273. The first count was premised on petitioner having intentionally maimed the victim, resulting in her death. *Id.*[1] The second count was premised on petitioner having caused the victim's death in an effort to conceal evidence of other crimes. *Id.*[2] The case was tried to a jury. At some point during the guilt phase of that trial, a juror, to whom we refer as "Juror B," sent the trial court a note stating that he "kn[e]w [he could] never sentence anyone to death." The court decided to speak with

---

[1] *See* ORS 163.095(1)(e) (aggravated murder includes murder that "occurred in the course of or as a result of intentional maiming or torture of the victim").

[2] *See* ORS 163.095(2)(e) (aggravated murder includes murder that "was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime").

Juror B individually, outside the presence of the remaining jurors. Toward the end of the discussion that followed, Juror B said that he did not "believe that [he] could sentence someone to death"; he had determined during the days leading up to writing the note that he "just personally [did not] think it's for [him] to make that decision." The court excused Juror B and an alternate juror took his place.

The jury convicted defendant of the two charged counts of aggravated murder. The jury declined to impose a death sentence and, instead, voted to impose a sentence of life imprisonment without the possibility of parole. The trial court entered a judgment that did not merge the guilty verdicts on the two aggravated-murder counts, but that purported to merge the counts "[f]or purposes of sentencing." *Garner I*, 194 Or App at 273.[3] On petitioner's direct appeal, we held that the record did not include evidence that petitioner "harbored a separate intent to maim the victim apart from his intent to cause her death," and the trial court therefore erred when it denied petitioner's motion for judgment of acquittal on the first count of aggravated murder. *Id.* at 279. We accordingly reversed the conviction on that count and remanded; our opinion included the following disposition:

> "Judgment of conviction for aggravated murder on count one reversed; judgment of conviction for aggravated murder on count two affirmed; remanded for entry of corrected judgment; otherwise affirmed."

*Id.* That opinion issued in July 2004. *Id.* at 268. Petitioner petitioned for review in the Oregon Supreme Court, making arguments that are not relevant here. The court denied review. *State v. Garner*, 337 Or 616, 103 P3d 639 (2004).

On remand, petitioner requested a new sentencing hearing on the theory that, absent the conviction based

---

[3] As we more recently have emphasized, "the phrase 'merged for sentencing purposes' is a misnomer and should never be used because it improperly conflates two distinct parts of the criminal process: the entry of convictions and the imposition of sentences." *State v. Mason*, 241 Or App 714, 718 n 4, 250 P3d 976 (2011). Rather, "merger" occurs when two or more determinations of guilt merge into a single conviction. *See State v. Nunes*, 268 Or App 299, 304, 341 P3d 224 (2014) ("ORS 161.067 * * * governs the circumstances under which multiple guilty verdicts or a defendant's guilty or no-contest pleas to multiple criminal charges should merge into a single conviction.").

on intentional maiming, "the jury might well have voted to give [him] life instead of life without parole." The trial court denied that request and, in 2005, entered a judgment convicting petitioner of only one count of aggravated murder and again imposing a sentence of "life without parole." On direct appeal from that judgment, petitioner argued that the trial court erred by denying his request for a resentencing hearing because resentencing was required under ORS 138.222(5)(b).[4] Indeed, petitioner argued that, upon reversing the first count of aggravated murder in the 2004 appeal, this court "was required to remand the case for re-sentencing." He suggested that this court's tag line in the 2004 opinion—remanding for entry of a corrected judgment—was incorrect because "ORS 138.222(5)(b) * * * clearly directs the court to remand for re-sentencing in such cases." In response, the state asserted, among other things, that petitioner had not sought reconsideration of the tag line in *Garner I* or petitioned for review regarding the remedy that we had ordered in that case. Accordingly, the state argued, petitioner's complaint about the limited remedy was barred by preclusion principles. Moreover, the state argued, the trial court could not err on remand by carrying out what this court had ordered in *Garner I*. This court affirmed the 2005 judgment on remand without opinion, and the Supreme Court again denied review. *State v. Garner*, 214 Or App 571, 166 P3d 606, *rev den*, 343 Or 467 (2007).

---

[4] As discussed in more detail below, ORS 138.222(5) now provides, and has since the legislature last amended that statute in 2005:

"(a) The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand the case to the trial court for resentencing. If the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand the entire case for resentencing. The sentencing court may impose a new sentence for any conviction in the remanded case.

"(b) If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts."

The 2005 amendments added subsection (b), quoted above. *See* Or Laws 2005, ch 563, § 1. Before then—and when we issued our opinion in *Garner I*—ORS 138.222(5) consisted entirely of what now is subsection (a).

Petitioner then initiated this post-conviction proceeding. In his second amended petition for post-conviction relief, he asserted several claims, only two of which are pertinent here. First, petitioner claimed that he was denied adequate assistance of appellate counsel in *Garner I* because his appellate lawyers did not "assign as legal error and present sufficient arguments regarding the wrongful dismissal" of Juror B from the jury in the aggravated-murder trial. Second, petitioner claimed that he was denied adequate assistance of appellate counsel, again in *Garner I*, because his appellate lawyers did not "[f]ile a timely motion for reconsideration and request a remand for resentencing."

In a memorandum opinion, the post-conviction court granted petitioner's petition in part and denied it in part. As pertinent here, the court rejected petitioner's claim related to his appellate lawyers' failure to assign error to the mid-trial dismissal of Juror B. The court ruled that "the judge's decision to replace the juror was correct" because the juror's "inability to sentence someone to death would substantially impair him in performance of his duties as a juror in the case." Accordingly, the court concluded, petitioner's appellate lawyers "did not err by failing to assign the dismissal of [Juror B] from the jury" as error in *Garner I*.

The post-conviction court granted relief, however, on petitioner's claim that his appellate lawyers were inadequate for having failed to file a petition for reconsideration in *Garner I* seeking a remand for resentencing, instead of (as we had ordered) remand for entry of a corrected judgment—one that would retain the originally imposed sentence of life imprisonment without parole. The court concluded on the basis of ORS 138.222(5) (2003) that "petitioner was entitled to a resentencing proceeding before a jury upon remand from the Court of Appeals"—a hearing at which his lawyer could advocate for a sentence of life *with* the possibility of parole, as the state would not have been "able to argue that petitioner should receive true life * * * because he had maimed the victim."

The court subsequently entered findings of fact and conclusions of law consistent with its memorandum opinion. With respect to the claim that petitioner's appellate lawyers

should have advocated for a resentencing hearing, the court stated:

> "A competent appellate attorney would have moved the Oregon Court of Appeals for reconsideration of [its] decision remanding Petitioner's case for entry of a 'corrected judgment.' If this had occurred, it is more probable than not that the result of the proceedings would have been different. Petitioner is entitled to remand to the Clatsop County Circuit Court for a resentencing proceeding before a jury."

The court granted relief under both the state and the federal constitutions on that claim. It entered a general judgment that ordered a new "sentencing proceeding before a jury" and otherwise denied the petition for post-conviction relief.

Petitioner appeals from that judgment and the superintendent cross-appeals. We review the post-conviction court's grant or denial of relief for legal error. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). We are bound by the post-conviction court's factual findings if they are supported by evidence in the record. *Everett v. Premo*, 279 Or App 470, 477, 380 P3d 1099 (2016).

We begin by addressing petitioner's appeal, in which he argues that the post-conviction court erred by denying his claim "that he was deprived of his state and federal constitutional rights to adequate assistance of appellate counsel when his appellate counsel failed to assign error to the trial court's excusal of [Juror B] from the jury during the guilt phase of trial." In that regard, petitioner argues that a "reasonable appellate attorney" would have noted what petitioner characterizes as the "extraordinary circumstances" surrounding Juror B's examination and dismissal by the criminal trial court. He points to ORS 136.280, which authorizes a trial court to dismiss a member of the jury "before the final submission of the case" if the juror "is unable to perform the duty because of illness or other cause which the court deems sufficient."[5] Petitioner contends that what he characterizes as Juror B's "uncertainty over his ability to impose the death penalty" did not establish "that his opinions would substantially impair his ability to follow the law."

---

[5] Other provisions of ORS 136.280 have been amended since petitioner's aggravated murder trial, but the parts quoted here are unchanged.

He argues that a reasonable appellate attorney would have argued that the trial court erred in excusing Juror B and asserts that "[t]here is a reasonable probability that this court would have reversed and remanded for a new guilt phase trial" had such an argument been made.

Petitioner's argument is governed by settled legal principles. A post-conviction petitioner who claims a deprivation of rights under Article I, section 11, of the Oregon Constitution must prove "(1) that his lawyer failed to exercise reasonable professional skill and judgment, and (2) that petitioner suffered prejudice as a result." *Everett*, 279 Or App at 478. A court considering whether a petitioner has met that burden must evaluate the adequacy of the lawyer's representation "from the lawyer's perspective at the time, without the distorting effects of hindsight." *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002). A lawyer has performed inadequately, for purposes of the constitutional analysis, only if the lawyer's decisions "reflect an absence or suspension of professional skill and judgment." *Gorham v. Thompson*, 332 Or 560, 567, 34 P3d 161 (2001).

The Supreme Court has explained how those standards apply when a post-conviction claim is based on an appellate lawyer's failure to make a particular assignment of error on appeal:

"A plaintiff seeking post-conviction relief stemming from a claim of inadequate assistance of appellate counsel for failing to assert a claimed error must establish (1) that a competent appellate counsel would have asserted the claim, and (2) that had the claim of error been raised, it is more probable than not that the result would have been different."

*Guinn v. Cupp*, 304 Or 488, 496, 747 P2d 984 (1987).[6]

---

[6] The Supreme Court more recently has held that, "where the effect of inadequate assistance of counsel on the outcome of a jury trial is at issue, it is inappropriate to use a 'probability' standard for assessing prejudice." *Green*, 357 Or at 322. Rather, "because many different factors can affect the outcome of a jury trial," a "tendency to affect the outcome standard" applies. *Id.* However, in the course of explaining that holding, the court recognized that—in some contexts other than failures of a lawyer that affected a *jury* determination—the court "has described the tendency to affect the outcome test in terms of actual probability." *Id.* at 323 n 13. *Guinn* describes one such context.

The mere fact that an attorney could have raised an argument does not establish that the attorney is inadequate for having failed to raise it; nor can the petitioner prevail simply by establishing that there was no evident downside to the attorney making such an argument. *Green*, 357 Or at 314. Rather, the pertinent question remains whether the lawyer's failure to make the argument "constituted inadequate assistance, especially when viewed in light of the strategy that the petitioner's counsel did pursue." *Id.* Thus, at least in some circumstances, when an appellate lawyer "reasonably could have concluded that * * * assigning error to [a particular] ruling would have had little chance of success," the decision not to make that assignment of error does not amount to a suspension of professional skill and judgment. *Hempel v. Palmateer*, 187 Or App 70, 74, 66 P3d 513 (2003).

In this case, then, the questions regarding the trial court's mid-trial dismissal of Juror B are (1) whether petitioner proved that every appellate attorney exercising reasonable professional skill and judgment would have assigned error to that dismissal, and (2) whether petitioner established that it is "more probable than not that the result would have been different" had petitioner's appellate attorney raised that argument. *Guinn*, 304 Or at 496. In this case, the answer to the second question is dispositive. As explained below, petitioner has not established a likelihood that the result would have been different had his appellate lawyers argued in *Garner I* that the trial court erred by excusing Juror B.

The Supreme Court has repeatedly addressed the circumstances in which a trial court conducting an aggravated murder trial in which the state seeks a death sentence may excuse a prospective juror for cause because of that individual's views on the death penalty. A person's moral opposition to the death penalty does not, itself, disqualify the person from jury service in such a case. *State v. Turnidge (S059155)*, 359 Or 364, 411, 374 P3d 853 (2016). Rather, the question is whether the person's views on capital punishment "would prevent or substantially impair" the person's performance as a juror in accordance with the instructions and the juror's oath. *Id.* at 407. Thus, if "a juror—whether in favor of or against the death penalty on

principle—holds such strong ethical or moral views that the juror's conclusion is effectively foregone, no matter the law or the evidence in the case, that juror may be appropriately excused for cause." *Id.* at 411. A trial court's "judgment as to a prospective juror's ultimate qualifications is entitled to great weight." *State v. Lotches*, 331 Or 455, 473, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). Accordingly, an appellate court reviews those decisions—including decisions regarding whether a juror's ability to serve is impaired by his or her views on the death penalty—for abuse of discretion. *Id.* at 473-74.

Nothing in the record of this post-conviction case suggests that the trial court presiding over petitioner's aggravated murder trial abused its discretion in excusing Juror B. As discussed above, by the end of his conversation with the trial court, Juror B stated unequivocally that he did not "believe that [he] could sentence someone to death." That statement, which followed a thoughtful discussion between Juror B and the trial court, supports the post-conviction court's finding that Juror B had an "inability to sentence someone to death." Neither the trial court nor the post-conviction court was required to view Juror B's statements in the light that petitioner suggests, that is, as merely expressing "uncertainty" and a "struggl[e] with the moral responsibility of deciding whether a person should be sentenced to death." Because the trial court had a basis for concluding that Juror B's personal beliefs would substantially impair his performance of his duties as a juror, it did not abuse its discretion by dismissing Juror B and replacing him with an alternate. It follows that petitioner was not prejudiced by the absence of a challenge to that ruling on direct appeal; we would have rejected any such challenge had it been made.[7] The post-conviction court correctly

---

[7] At times, petitioner has emphasized that the trial court dismissed Juror B mid-trial, not during *voir dire*. He points out that we have said that the standard for a juror's removal "due to a substantial impairment of the juror to decide the case fairly and impartially" under ORS 136.280, which governs a trial court's dismissal of a juror mid-trial, is "at least as stringent as the standard for removal *before* trial." *Monahan v. Belleque*, 234 Or App 93, 101, 227 P3d 777, *rev den*, 348 Or 669 (2010) (emphasis in original). However, petitioner does not rely on any possible distinction between the pre-trial and mid-trial standards for dismissal of jurors; rather, he contends only that Juror B had done nothing more than express uncertainty and that his statements "did not establish that his opinions

denied petitioner post-conviction relief on his claim that his appellate lawyers should have argued that the trial court erred in dismissing Juror B from the jury.

We turn to the superintendent's cross-appeal, which relates to our disposition in *Garner I*, where we reversed the aggravated-murder conviction that was premised on intentional maiming of the victim, affirmed the other aggravated-murder conviction, "remanded for entry of corrected judgment," and otherwise affirmed. 194 Or App at 279. As noted, the post-conviction court granted relief on petitioner's claim that his appellate attorneys should have sought reconsideration in *Garner I* on the ground that he was entitled to a remand for resentencing on the single remaining count of aggravated murder, not just to remand for entry of a corrected judgment incorporating the already-imposed sentence of life without parole.

In challenging that grant of post-conviction relief, the superintendent argues that, at the time we issued *Garner I*, the appellate courts had interpreted ORS 138.222(5) (2003) in a way that did not require remand for a resentencing hearing after "reversal of one of the [two] theories supporting [petitioner's] conviction for aggravated murder." Accordingly, the superintendent concludes, "competent counsel would not, in 2004, have requested reconsideration of this court's decision in that first direct appeal."

Before analyzing the merits of that argument, we pause to note its narrow focus. The superintendent does not ask us to reverse the grant of post-conviction relief on the ground that the post-conviction court erred in determining that petitioner was prejudiced by his appellate lawyers' failure to seek reconsideration. Nor does the superintendent argue that the post-conviction court's determination of inadequacy erroneously took into account its assessment that reconsideration was worth seeking because a resentencing hearing might have benefited petitioner. Rather, the superintendent argues only that competent counsel would not have had reason to know, when *Garner I* issued in April

---

would substantially impair his ability to follow the law." We reject that argument for the reasons stated above.

2004, that a reconsideration petition seeking a remand for resentencing might have been viable.

We turn to that question: whether an appellate attorney who was exercising reasonable professional skill and judgment would have sought reconsideration in *Garner I*, arguing that petitioner was entitled to a resentencing hearing on remand under ORS 138.222(5) (2003). In answering that question, we must consider ORS 138.222(5) (2003) and related case law "as a lawyer would have seen it at the time." *Burdge v. Palmateer*, 338 Or 490, 498, 112 P3d 320 (2005). That the law was not then settled in petitioner's favor is not dispositive. Rather, we must consider whether an argument under ORS 138.222(5) (2003) would have "so obviously offer[ed] possible benefits to [petitioner] that any lawyer exercising reasonable professional skill and judgment" would have raised it. *Burdge*, 338 Or at 500. As part of that determination, we assess whether a lawyer whose "preparation on the law" was "appropriate to the nature and complexity of the case" would have recognized the argument. *Walraven v. Premo*, 277 Or App 264, 278, 372 P3d 1 (2016).

When we issued *Garner I* in 2004, ORS 138.222(5) (2003) provided, as it had for a decade:

> "The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand the case to the trial court for resentencing. If the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand the entire case for resentencing. The sentencing court may impose a new sentence for any conviction in the remanded case."

*See* Or Laws 1993, ch 692, § 2 (adding subsection (5) to ORS 138.222). By then, we routinely had remanded for resentencing under the statute in cases in which we had, on appeal, determined that the trial court had committed a *sentencing* error, that is, when the trial court "in imposing a sentence in the case, committed an error that requires resentencing."

ORS 138.222(5) (2003); *see, e.g., State v. Beltran*, 127 Or App 238, 241, 872 P2d 983 (1994) (reversing because of error in imposing a fine; declining to address another sentencing argument "because the entire case must be remanded for resentencing. ORS 138.222(5)."); *State v. Dvorak*, 124 Or App 578, 580, 863 P2d 1314 (1993), *rev den*, 318 Or 351 (1994) (where the trial court had erred in sentencing one of two counts of conviction, we concluded "that the statute requires us to remand 'the entire case,' *i.e.*, both counts, for resentencing * * *").

But we had not remanded for resentencing under ORS 138.222(5) *only* when we reversed because of errors in sentencing. In April 2003, more than a year before we decided *Garner I*, we issued our opinion in *State v. Rodvelt*, 187 Or App 128, 66 P3d 577, *rev den*, 336 Or 17 (2003), in which we explained that the then-existing version of ORS 138.222(5) required remands for resentencing in at least some cases where we were reversing for other reasons. The *Rodvelt* defendant had been convicted of two counts of first-degree criminal mistreatment and two counts of fourth-degree assault. *Id.* at 130. He argued on appeal that the trial court had erred in failing to merge the guilt determinations on all four of those counts into only two convictions for first-degree criminal mistreatment. We agreed. *Id.* We then considered whether we should remand only for the merger for which the defendant had advocated or whether, instead, we should remand for resentencing.

We concluded in *Rodvelt* that a failure to merge was "an error that requires resentencing" within the meaning of ORS 138.222(5) and, therefore, remanded for merger *and* for resentencing. 187 Or App at 130-31. In doing so, we acknowledged that the reversible error on appeal related to a conviction, not directly to a sentence. However, we rejected the argument "that sentencing errors that flow from erroneous convictions are not the type of 'sentencing errors' addressed by ORS 138.222(5)." *Id.* at 135. Our decision focused on the complexity of felony sentencing under the sentencing guidelines and noted that "the way that one conviction is sentenced affects how the remaining convictions are classified on the sentencing guidelines grid for purposes

of determining what sentences may be imposed on those convictions." *Id.* at 132.[8]

Thus, by 2003, we had held that at least some errors *not* related to sentencing required remand for resentencing under ORS 138.222(5). Nonetheless, the superintendent argues here that a reasonable appellate lawyer who was familiar with *Rodvelt* still would not have advocated a remand for resentencing in *Garner I* because *Rodvelt* dealt only with the complexity of sentencing under the guidelines and emphasized how difficult it can be, in that context, for an appellate court to determine "whether, and to what extent, an error has affected the actual sentences on the remaining convictions." 187 Or App at 135. The superintendent concludes that, because this aggravated-murder case involved life sentences, not guidelines sentences, *Rodvelt* was inapposite. For the following reasons, we disagree.

First, as we have explained, the question is not whether the meaning of ORS 138.222(5) (2003) was completely settled in petitioner's favor at the time we issued *Garner I*, but whether "the statute * * * so obviously offer[ed] possible benefits to a defendant that any lawyer exercising reasonable professional skill and judgment would raise it." *Burdge*, 338 Or at 500. In other words, even though the law was unsettled, we must consider whether "the benefits of raising an issue [were] so obvious that any lawyer exercising reasonable professional skill and judgment would do so." *Ross v. Hill*, 235 Or App 340, 344, 231 P3d 1185, *rev den*, 349 Or 56 (2010).

---

[8] As we observed in our initial opinion in *State v. Muyingo*, 225 Or App 156, 200 P3d 601, *adh'd to as clarified on recons*, 226 Or App 327, 203 P3d 365, *rev den*, 346 Or 364 (2009), the 2005 legislature amended ORS 138.222(5), adding a provision now codified in subsection (b). In that opinion, we explained that the amendment essentially codified our decision in *Rodvelt*:

"In 2005, *see* Or Laws 2005, chapter 563, section 1, the legislature added the following language, which is now codified at ORS 138.222(5)(b):

"'If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts.'

"That amendment effectively codified our construction of the prior version of the statute * * * in *Rodvelt*."

*Muyingo*, 225 Or App at 162 n 1.

*Rodvelt* was a significant case in the world of criminal appellate practice, given its expansion of the circumstances under which this court will remand for resentencing. Reasonably competent appellate criminal lawyers would have been familiar with that case in 2004 or at least, when faced with a limited remand like that ordered in *Garner I*, would have discovered it through doing research "appropriate to the nature and complexity of the case." *Walraven*, 277 Or App at 278. Moreover, despite its emphasis on sentencing under the guidelines, *Rodvelt* was based on a more fundamental principle—that errors leading to reversals of some, but not all, of a defendant's convictions can sometimes have affected the sentences that were imposed on the remaining convictions. It would have taken no great imagination for an appellate lawyer to have argued that, under *Rodvelt*, the disposition in *Garner I* should include a remand for a resentencing hearing at which the jury would not take into account an "intentional maiming" theory of aggravated murder—a theory that could have affected the decision of the original sentencing jury. Thus, the possibility of seeking remand for resentencing in *Garner I* under ORS 138.222(5) (2003) and *Rodvelt* would have been obvious to any appellate lawyer exercising reasonable professional skill and judgment.

And *Rodvelt* was not the only precedent pointing in that direction when we issued *Garner I* in 2004. Nearly two years earlier, we had issued our initial opinion in *State v. Sanders*, 185 Or App 125, 57 P3d 963 (2002) (*Sanders I*), *adh'd to as modified on recons*, 189 Or App 107, 74 P3d 1105 (2003) (*Sanders II*), *rev den*, 336 Or 657 (2004). The *Sanders* defendant had been convicted of multiple counts of assault arising out of an incident involving a single victim. *Sanders I*, 185 Or App at 127. He argued that some of the counts should have merged, and we agreed. *Id.* We remanded with instructions to merge certain of the counts, and we otherwise affirmed. *Id.* at 131. The state petitioned for reconsideration, asserting, among other things, "that we erred * * * in failing to remand the entire case for resentencing" under ORS 138.222(5). *Sanders II*, 189 Or App at 109. We agreed and, in a 2003 opinion on reconsideration, remanded for resentencing. *Id.* Relying on *Rodvelt*, we held that "when one conviction in a multiple-conviction case is

reversed," ORS 138.222(5) required "remand of the entire case" for resentencing. *Id.* at 112.

True, *Sanders II* was another sentencing-guidelines case. But it, like *Rodvelt*, emphasized that the need for resentencing when fewer than all convictions are reversed is based on the fact that the "reversal may affect the correctness of other sentences imposed in the case." *Id.* That is precisely the principle that petitioner asserts his appellate lawyers in *Garner I* should have advocated—that resentencing on his affirmed aggravated-murder conviction was necessary because the original sentence of life without parole may have resulted, in part, from the jury's incorrect determination that petitioner had intentionally maimed the victim. Moreover, *Sanders II* also demonstrated that a petition for reconsideration can be an appropriate mechanism for requesting a different disposition on appeal.

Our April 2004 decision in *State v. Randant*, 192 Or App 668, 87 P3d 688 (*Randant I*), *adh'd to as clarified on recons*, 196 Or App 601, 103 P3d 1134 (2004) (*Randant II*), *aff'd*, 341 Or 64 (2006), *cert den*, 549 US 1227 (2007), also would have informed the decision of a reasonable appellate attorney who was considering what options remained available after we issued *Garner I* a few months later. The *Randant* defendant was found guilty of multiple crimes based on the kidnapping and killing of a single victim, including two counts of aggravated murder that were based on different theories of aggravation (murder committed in the course of committing first-degree kidnapping and murder committed in the course of committing second-degree kidnapping), as well as a count of felon in possession of a firearm (FIP). *Randant I*, 192 Or App at 669. "The trial court had intended to enter convictions only on [one aggravated-murder count and the FIP count] and to merge the remaining counts" into the single conviction for aggravated murder, but "it actually entered separate convictions" on all counts, "merging them only for purposes of sentencing." *Id.* On appeal, we agreed that the trial court erred by entering convictions beyond those for a single count of aggravated murder and for FIP. Accordingly, we vacated the convictions that should not have been entered and "remanded for merger of convictions *and for resentencing.*" *Id.* (emphasis added).

The state petitioned for reconsideration of *Randant I*, arguing that "we should have modified the judgment instead of remanding the case for resentencing." *Randant II*, 196 Or App at 603. It asserted that, "because the actual sentence that petitioner received was not affected by the error, we should modify the judgment only to reflect the single conviction for aggravated murder instead of remanding the entire case for resentencing." *Id.* at 606. We disagreed, stating in an opinion on reconsideration that ORS 138.222(5) (2003) always required a remand for resentencing following a determination that the trial court erred in failing to merge certain counts. *Id.* at 606-07. We cited *Rodvelt* and *Sanders II* in support of that conclusion. *Id.* at 607.

The superintendent acknowledges that our opinion in *Randant II* "treated *Rodvelt* as creating a *per se* rule requiring full resentencing under *former* ORS 138.222(5), even in non-guidelines cases" and that subsequent cases have followed that rule. The superintendent points out, however, that *Randant II* issued "five months after the decision in petitioner's appeal" and he asserts that reasonable appellate counsel would not have anticipated that opinion. The difficulty with the superintendent's argument is that the original decision in *Randant I* issued *before* our decision in *Garner I*, establishing (albeit without explanation at that point) that remand for resentencing was the proper disposition following reversal (or vacation) of fewer than all convictions, even in cases involving nonguidelines sentences.

Thus, when *Garner I* issued, this court's opinions in *Randant I*, *Sanders II*, and *Rodvelt* all would have obviously supported a petition for reconsideration asserting that petitioner was entitled to a remand for resentencing, rather than only to remand for entry of a corrected judgment reflecting a single aggravated-murder conviction. Nonetheless, the superintendent argues that reasonable appellate counsel would not have recognized the availability of remand in this case before the reconsideration opinion issued in *Randant II*, given the Supreme Court's opinions in *State v. Hale*, 335 Or 612, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004), and *Lotches*, 331 Or 455. In each of those cases, the Supreme Court reversed some, but not all, of the

defendant's aggravated-murder convictions. *Hale*, 335 Or at 632; *Lotches*, 331 Or at 499. In *Hale*, the court vacated the death sentences on the aggravated-murder convictions that it had reversed, and it remanded only "for entry of corrected judgments of conviction" regarding the affirmed aggravated-murder counts—it affirmed the death sentences on those counts and did not remand for resentencing. 335 Or at 631-32. Similarly, in *Lotches*, the court affirmed the death sentence for one count of aggravated murder after reversing two others; again, it did not remand for resentencing on that conviction. 331 Or at 499.

It is true that the opinions in *Lotches* and *Hale* would not, themselves, have given a reasonable appellate attorney any reason to consider seeking a remand for resentencing after we issued *Garner I*. But nothing in *Lotches* or *Hale* suggests that the defendants in those cases argued that they were entitled to resentencing on the surviving aggravated-murder convictions, and nothing in those opinions suggests that the Supreme Court considered and rejected such an argument. The *absence* of a resentencing discussion in *Lotches* and *Hale* would not have dissuaded reasonable appellate counsel in *Garner I* from seeking remand for resentencing based on the results and reasoning that were *present* in *Randant I*, *Sanders II*, and *Rodvelt*.

The post-conviction court correctly concluded that reasonable appellate counsel would have petitioned for reconsideration in *Garner I*. Accordingly, the superintendent's cross-appeal presents no basis for reversal.

Affirmed on appeal and cross-appeal.