Argued and submitted June 23, 2015, judgment on petitioner's fourth claim reversed and remanded; otherwise affirmed March 1; petition for review denied August 24, 2017 (361 Or 803)

JOSE H. LIZARRAGA-REGALADO,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
10C10112; A154944

390 P3d 1079

Jason L. Weber argued the cause for appellant. With him on the brief was O'Connor Weber LLP. Jose H. Lizarraga-Regalado filed a supplemental brief *pro se.*

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Haselton, Senior Judge.*

---

* Haselton, S. J. *vice* Hadlock, C. J.

## HASELTON, S. J.

Petitioner appeals a judgment denying post-conviction relief. He assigns error to the trial court's dismissal, by way of summary judgment, of his claim based on criminal trial counsel's failure to challenge the giving of a "natural and probable consequences" uniform jury instruction identical to that which the Oregon Supreme Court later disapproved in *State v. Lopez-Minjarez*, 350 Or 576, 582-84, 260 P3d 439 (2011). For the reasons that follow, we conclude that (1) the first of the two alternative grounds on which the post-conviction court granted summary judgment was erroneous as a matter of law, *see, e.g., Walraven v. Premo*, 277 Or App 264, 277-85, 372 P3d 1 (2016); and (2) petitioner proffered sufficient contravening evidence to preclude summary judgment on the second alternative ground. Accordingly, we reverse and remand.[1]

The historical and procedural circumstances material to our review are undisputed. In March 2004, petitioner was charged, by way of a five-count indictment, with felonies against three victims, C, D, and E. The indictment further alleged that petitioner had committed each of those offenses "jointly" with five codefendants. Specifically, Count 1 (attempted murder) and Count 2 (second-degree assault) were based on conduct against C; Count 3 (first-degree robbery) pertained to conduct against D; and, finally, Count 4 (first-degree kidnapping with a firearm) and Count 5 (first-degree robbery with a firearm) were both based on conduct against E.

The criminal case proceeded to trial before a jury in the fall of 2004. The court—without exception from petitioner's criminal defense counsel—instructed the jury consistently with the then-extant accomplice liability "natural and probable consequences" uniform jury instruction:

"A person who aids or abets another in committing a crime, in addition to being criminally responsible for the crime that is committed, is also criminally responsible for any acts or other crimes that were committed as a natural

---

[1] In a supplemental *pro se* brief, petitioner raises additional assignments of error pertaining to the disposition of some other claims. We reject those contentions without further discussion.

and probable consequence of the planning, preparation, or commission of the intended crime."[2]

Immediately before the court so charged the jury, the prosecutor, anticipating that instruction, had highlighted the "natural and probable consequences" concept in closing argument. The jury found petitioner guilty on all counts, and the court entered consequent judgments with sentences imposing 400 months' total incarceration.

After unsuccessfully appealing his convictions, petitioner timely initiated this action in January 2010. Thereafter, in August 2011, the Supreme Court issued its opinion in *Lopez-Minjarez*, and petitioner subsequently filed his operative first amended petition for post-conviction relief. That petition included nine claims of inadequate representation by criminal trial counsel, including petitioner's fourth claim, which was based on his defense attorney's failure to object to the giving of the "natural and probable consequences" instruction.[3] With the first amended petition, petitioner submitted various "exhibits," including two pages from the trial transcript pertaining to the fourth claim. The first of those pages set out a portion of the state's closing arguments in which (as described above) the prosecutor referred to the content of the "natural and probable consequences" instruction and told the jury that that instruction was "most important" with respect to its consideration of the charges based on conduct against C. The second transcript page showed that the court had, in fact, given that instruction.

Defendant filed a motion for summary judgment against all nine claims alleged in the first amended petition. With reference to the fourth claim, defendant's summary judgment motion asserted:

---

[2] In the current compilation of the Uniform Criminal Jury Instructions, that instruction is listed as "withdrawn" as an "incorrect statement of the law" in light of *Lopez-Minjarez*. *See* UCrJI 1053.

[3] The first amended petition did not allege that the relief sought pursuant to the fourth claim related only to certain counts/convictions; nor did petitioner, in opposing the motion for summary judgment, so limit that claim. However, in his appellate brief, petitioner states, "In this appeal, petitioner is not contesting his convictions for counts 4 and 5." Consequently, for purposes of our analysis and disposition, the fourth claim is so circumscribed.

"Petitioner was tried in 2004. The Supreme Court's decision in [*Lopez-Minjarez*] was not published until about seven years after petitioner's trial. *Petitioner has not provided any evidence to support a conclusion that all reasonable trial attorneys, in 2004, were objecting to the 'natural and probable consequences' portion of the aider and abettor uniform instruction.*"

(Emphasis added.)[4] Thus, defendant's summary judgment motion related solely to the reasonableness of criminal trial counsel's conduct. The summary judgment motion did not assert, alternatively, that there were no genuine issues of material fact as to whether petitioner had been prejudiced by counsel's failure to object to the "natural and probable consequences" instruction.

Petitioner filed a response, including a declaration in which he averred, *inter alia*, that criminal trial counsel had, in fact, failed to object to the "natural and probable consequences" instruction. With respect to the fourth claim, the response remonstrated that "[t]he issue is not whether trial counsel should have anticipated [*Lopez-Minjarez*]"—but rather, whether, in "a complicated case such as Petitioner's" and given the state of the law at the time of trial, including *State v. Anlauf,* 164 Or App 672, 995 P2d 547 (2000), on which defense counsel in *Lopez-Minjarez* had relied, criminal trial counsel "should have at least preserved the argument for appellate review."[5]

---

[4] Defendant concurrently asserted that the first amended petition, including the fourth claim, did not comply with the "attachment" requirement of ORS 138.580, which provides that "affidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition."

As described below, the post-conviction court's disposition with respect to the fourth claim was based on its conclusion that "[t]his claim presents no genuine issues of material fact"—that is, the generic standard for granting summary judgment—and not on any purported noncompliance with ORS 138.580. The parties' briefing on appeal, which include no arguments pertaining to ORS 138.580, comports with that understanding.

[5] In *Anlauf,* we addressed, and reversed, the denial of a motion for judgment of acquittal on a charge of unlawful use of a weapon, where the state's theory of accomplice liability was predicated on the "natural and probable consequences" concept. 164 Or App at 678-79. In so holding, although we had no occasion to "decide the viability of the 'natural and probable consequences' *instruction*," *Walraven*, 277 Or App at 280 (emphasis in original), we

"characterized the case law as not supporting liability for the natural and probable consequences of separate acts committed by accomplices and also noted that any such theory was based on principles of accomplice liability

Defendant countered with a reply memorandum in which he reiterated, verbatim, his contention that "petitioner has not provided any evidence to support a conclusion that all reasonable trial attorneys, in 2004, were objecting to the 'natural and probable consequences' portion of the aider and abettor uniform instruction." In addition, defendant asserted for the first time that, given the evidence at trial and the manner in which the case had been tried, "there is no reason to think that the jury *** relied on the 'natural and probable consequences' instruction to find petitioner guilty on counts [one] and two" of the indictment, relating to conduct against C. As factual support for that newly advanced "lack of prejudice" contention, defendant submitted, for the first time on reply, extensive additional excerpts of the trial transcript.

The post-conviction court allowed defendant's motion in part, granting summary judgment against five of petitioner's nine claims—including the fourth claim—and denying the motion as to the others. With respect to the fourth claim, the court concluded:

> "This claim presents no genuine issues of material fact. Clearly, trial counsel did not object to the Uniform Jury Instruction, but Petitioner fails to present any evidence that [failure to raise such an objection] was unreasonable based on the case law existing in 2004. Additionally, Petitioner fails to show how he was prejudiced by trial counsel not objecting to the instruction."

Thus, the court granted summary judgment against the fourth claim on alternative grounds, concluding that petitioner had failed to demonstrate material factual issues with respect to each of the elements of post-conviction relief, *viz.*, deficient performance by counsel and consequent prejudice. Following a trial on the remaining claims, the post-conviction court rejected those claims as well, and petitioner appeals from the ensuing judgment.

Our review of the allowance of summary judgment against petitioner's fourth claim implicates both the

---

that predated the adoption of the Criminal Code of 1971 and specifically, ORS 161.155."

*Id.* (quoting *Wade v. Brockamp*, 268 Or App 373, 384, 342 P3d 142 (2015)).

substantive standards governing post-conviction relief and the procedural requisites and constraints of summary judgment. Very recently in *Garner v. Premo*, 283 Or App 494, 389 P3d 1143 (2017), we summarized the "settled legal principles" pertaining to post-conviction relief claims based on purported deficient representation, including, specifically, failure to raise a legal challenge:

> "A post-conviction petitioner who claims a deprivation of rights under Article I, section 11, of the Oregon Constitution must prove '(1) that his lawyer failed to exercise reasonable professional skill and judgment, and (2) that petitioner suffered prejudice as a result.' *Everett* [*v. Premo*, 279 Or App 470, 478, 380 P3d 1099 (2016)]. A court considering whether a petitioner has met that burden must evaluate the adequacy of the lawyer's representation 'from the lawyer's perspective at the time, without the distorting effects of hindsight.' *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002). A lawyer has performed inadequately, for purposes of the constitutional analysis, only if the lawyer's decisions 'reflect an absence or suspension of professional skill and judgment.' *Gorham v. Thompson*, 332 Or 560, 567, 34 P3d 161 (2001).
>
> "* * * * *
>
> "The mere fact that an attorney could have raised an argument does not establish that the attorney is inadequate for having failed to raise it; nor can the petitioner prevail simply by establishing that there was no evident downside to the attorney making such an argument. *Green* [*v. Franke*, 357 Or 301, 314, 350 P3d 188 (2015)]. Rather, the pertinent question remains whether the lawyer's failure to make the argument 'constituted inadequate assistance, especially when viewed in light of the strategy that the petitioner's counsel did pursue.' *Id.*"

283 Or App at 501-02.[6]

In post-conviction proceedings, as generally, a movant defendant is entitled to summary judgment against a claim

---

[6] Because we ultimately conclude that petitioner's criminal trial counsel was inadequate under Article I, section 11, we frame our analysis without reference to petitioner's alternative contention under the Sixth Amendment. *See Montez v. Czerniak*, 355 Or 1, 7 n 3, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

"if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."

ORCP 47 C.

Here, as noted, the post-conviction court granted summary judgment against the fourth claim on two alternative bases, either of which, if sustained, would compel affirmance. Accordingly, we address each in turn.

The post-conviction court first concluded that defendant was entitled to summary judgment because, although petitioner's criminal trial counsel did not object to the "natural and probable consequences" instruction, petitioner had "fail[ed] to present any evidence" that the failure to raise such an exception was "unreasonable based on the case law existing in 2004." Implicit in that conclusion is the court's acceptance of defendant's premise, asserted in the motion for summary judgment and reiterated in defendant's reply, that it was incumbent on petitioner to have proffered evidence "to support a conclusion that all reasonable trial attorneys, in 2004, were objecting to the 'natural and probable consequences'" instruction.

The post-conviction court erred in that regard. We and the Supreme Court have consistently held, in generally analogous circumstances, that the determination of whether criminal defense counsel's failure to raise a legal challenge breached the standard of "reasonable professional skill and judgment" depends on "an examination of the state of the law at the relevant times," *Krieg v. Belleque*, 221 Or App 36, 40, 188 P3d 413, *rev den*, 345 Or 317 (2008), and the potential risks and benefits of raising such a challenge. *See, e.g., Garner*, 283 Or App at 505; *Krieg*, 221 Or App at 40. *See*

*generally Burdge v. Palmateer,* 338 Or 490, 497-500, 112 P3d 320 (2005). Here, petitioner proffered evidence pertaining to those considerations that, at least, precluded summary judgment for defendant on the issue of whether criminal trial counsel's conduct breached the requisite standard of care.

In two recent decisions, issued after the post-conviction court entered judgment here, we have concluded that defense counsels' failure to except to the accomplice liability "natural and probable consequences" instruction in trials that (as here) occurred after we issued *Anlauf* in 2000 and before the Supreme Court issued *Lopez-Minjarez* in 2011 constituted a failure to exercise reasonable professional skill and judgment. *See Walraven,* 277 Or App 264; *Wade v. Brockamp,* 268 Or App 373, 342 P3d 142 (2015).[7]

*Walraven,* which substantially incorporated, but refined and amplified, *Wade*'s reasoning is especially instructive. There, the petitioner had been charged with multiple counts of aggravated murder, as well as one count each of felony murder and intentional murder, all arising from an armed robbery and subsequent fatal shooting committed with his older brother. 277 Or App at 266-67. During the criminal trial—which occurred in July 2000, six months after *Anlauf* issued—the state presented evidence that either the petitioner had personally committed the murder or, even if he had not himself killed the victim (*i.e.,* his brother had), he had at least participated with his brother in the armed robbery of the victim, which had immediately

---

[7] Conversely, in *Hale v. Belleque,* 255 Or App 653, 686, 298 P3d 596, *adh'd to on recons,* 258 Or App 587, 312 P3d 533, *rev den,* 354 Or 597 (2013), and *Eklof v. Steward,* 273 Or App 789, 792-93, 359 P3d 570 (2015), *rev'd in part on other grounds,* 360 Or 717, 385 P3d 1074 (2016), we held that where the petitioners' criminal trials antedated *Anlauf,* there was no such failure. In *Eklof,* we highlighted that temporal distinction:

"[In *Wade,* we] distinguished that case from *Hale* because the underlying criminal trial in *Hale* was decided before *State v. Anlauf,* where we signaled that the uniform jury instruction misstated the law. Unlike *Wade* and like *Hale,* petitioner's criminal trial occurred before *Anlauf* and, thus, petitioner's counsel was not alerted to the fact that the instruction was legally flawed."

*Id.* at 792 n 2 (citations omitted); *see also Eklof,* 360 Or at 719 n 2 (rejecting without discussion the petitioner's challenge to the granting of summary judgment against claim based on counsel's failure to object to "natural and probable consequences" instruction).

preceded the killing. *Id.* at 268-69. Given that evidence, the state proceeded, in part, on a theory of accomplice liability by which the jury could find the petitioner guilty of aggravated murder and intentional murder "without finding that he intended to kill or help kill the victim, so long as it found that [he] was involved in the armed robbery." *Id.* at 269. Accordingly, the state requested, and the court— without exception from the petitioner's defense counsel— gave a "natural and probable consequences" instruction (which was identical to that given in the present petitioner's criminal trial four years later). *Id.* at 273.

The jury found the petitioner guilty of aggravated murder, as well as felony murder and intentional murder, and the petitioner ultimately sought post-conviction relief, alleging that criminal trial counsel had been deficient in myriad respects, including in failing to object to the "natural and probable consequences" instruction. *Id.* at 266. Following a trial, the post-conviction court rejected all claims, including that pertaining to the "natural and probable consequences" instruction. *Id.* at 275. In so holding, the court found persuasive an explanation advanced by criminal defense counsel that, given the law existing at the time of the criminal trial, he "had no reason to believe that an objection to the jury instruction would have been successful." *Id.* at 274. The post-conviction court further determined that the petitioner had failed to demonstrate that he had been actionably prejudiced by criminal defense counsel's inaction in that regard. *Id.* at 275.

We reversed in part the post-conviction court's disposition of the claim based on the failure to object to the "natural and probable consequences" instruction. Specifically, we concluded that (1) counsel's inaction constituted a failure to exercise reasonable professional skill and judgment, *id.* at 279-85; and (2) while the petitioner had been consequently prejudiced with respect to the jury's consideration of the aggravated murder and intentional murder charges, he had not been so prejudiced with respect to the felony murder charge. *Id.* at 285-87.[8]

---

[8] We also affirmed, without further discussion, the post-conviction court's rejection of the petitioner's other claims.

Our conclusion regarding the breach of requisite care in representation derived from the conjunction of three premises. First, the exercise of reasonable professional skill and judgment requires criminal defense counsel to research and analyze "'the law to the extent appropriate to the nature and complexity of the case.'" *Id.* at 283 (quoting *Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981)). Second, given the "nature and complexity of the case" in *Walraven*—including the prosecution's partial reliance on an accomplice liability theory that purported to "reliev[e] the jury of the requirement to find an element" (*viz.*, intent) of felony charges—it was incumbent on counsel to investigate whether, or to what extent, the "natural and probable consequences" instruction on which the state's theory depended comported with the existing law of accomplice liability. *Id.* at 283-84. Finally, reasonable investigation "would have led to the discovery of *Anlauf*." *Id.* at 284. That "discovery" would, in turn, have caused any reasonable defense counsel to object to the instruction:

> "Although *Anlauf* did not explicitly render the *instruction* obsolete (an issue we were not called upon to decide), we did establish that the erroneous accomplice liability *theory*—that a defendant who participates in one crime is necessarily responsible as an accomplice for other crimes that were the natural and probable consequences of the intended predicate crime—was not supported by statutes or case law."

*Id.* (emphasis in original); *see also id.* at 282 (summarizing *ratio decidendi* in *Wade*: "Trial counsel's failure was not a failure to 'anticipate' reversal in the law of accomplice liability, as argued by the defendant, but rather a failure to compare the instruction to the law of accomplice liability, which would have led counsel to *Anlauf*.").

In so holding in *Walraven*, we rejected the defendant's efforts to distinguish *Wade* either on temporal grounds (*viz.*, that while six years had elapsed between *Anlauf* and Wade's criminal trial, the interval between *Anlauf* and Walraven's criminal trial was only six months) and on differences in the evidence offered in the respective post-conviction proceedings, including affidavits by counsel

pertaining to discussions within the criminal defense bar and local practice norms. *Id.* at 282-84. While acknowledging the defendant's proposition that, because of the much shorter interval in *Walraven*, "the broader criminal defense bar had not yet had time to absorb the impact of *Anlauf* on the viability of the instruction," we concluded that that circumstance did not excuse trial counsel's failure because "nothing prevented counsel from discovering the decision in preparing for a trial heavily dependent on a theory of accomplice liability." *Id.* at 284. We further concluded that, given the controlling legal principles, evidence (of the sort submitted in *Wade*, but not in *Walraven*) that before the criminal trial, the criminal defense bar had engaged in listserve discussions of "*Anlauf* and the instruction" was "not essential" to the conclusion that failure to object to the "natural and probable consequences" instruction was unreasonable. *Id.*

We return to this case. In opposing summary judgment, petitioner proffered evidence that, when viewed most favorably to his claim, would establish that (1) his criminal trial occurred after *Anlauf* issued; (2) he was charged with felonies, which, allegedly, he committed jointly with codefendants; (3) one of the state's theories of liability, with respect to one or more of the charged felonies, was that petitioner was liable as an accomplice because of the "natural and probable consequences" of other crimes in which he had participated jointly; (4) the criminal trial court gave the uniform accomplice liability "natural and probable consequences" instruction; (5) petitioner's defense counsel did not object to that instruction; and (6) the jury found defendant guilty of all charges. Those facts alone, without any additional evidence, constituted a *prima facie* showing that, by failing to object to the instruction, petitioner's criminal defense counsel breached the standard of reasonable professional skill and judgment. *See Walraven*, 277 Or App at 284; *Wade*, 268 Or App at 386-88.

As noted, the premise of the post-conviction court's conclusion to the contrary was that petitioner had "fail[ed] to present any evidence" that the failure to raise such an objection "was unreasonable based on the case law existing in 2004." With respect—and with full appreciation that the court's ruling antedated *Wade* and *Walraven*—we disagree.

As described immediately above, petitioner *did* present such evidence—evidence that was, and is, legally sufficient to support the requisite determination as to the alleged "unreasonableness" of counsel's performance. Moreover, to the extent the post-conviction court assumed (as defendant repeatedly argued) that, to defeat summary judgment, petitioner was obligated to submit evidence of discussions or practice among other criminal defense attorneys circa 2004, that was incorrect. Rather, given the post-*Anlauf* timing of petitioner's criminal trial, the nature of the charges against him, and the prosecution's reliance on a theory of accomplice liability predicated on the "natural and probable consequences" instruction, additional evidence of that sort was "not essential" to establish a failure of reasonable professional skill and judgment. *Walraven*, 277 Or App at 284.

In sum, the post-conviction court erred in granting summary judgment on the first alternative ground.

Nor can the post-conviction court's disposition be affirmed in its entirety on its alternative rationale that petitioner had "fail[ed] to show how he was prejudiced by trial counsel not objecting to the instruction." As noted, that matter was raised for the first time in defendant's reply memorandum, supplemented by additional excerpts from the criminal trial transcript.[9] Upon review of the summary judgment record, including the portion of the prosecutor's closing argument that petitioner proffered, we conclude that when "viewed in a manner most favorable" to petitioner, ORCP 47 C, the record discloses genuine issues of material fact as to whether petitioner was prejudiced with respect to either or both Counts 1 and 2 of the indictment (pertaining to conduct against C), but not as to Count 3 (pertaining to conduct against D), by criminal trial counsel's failure to object to the "natural and probable consequences" instruction.

---

[9] On appeal, petitioner does not contend that the post-conviction court's consideration of lack of prejudice as an alternative basis for summary judgment was procedurally improper in this posture. *But see Two Two v. Fujitec America, Inc.*, 355 Or 319, 324-26, 325 P3d 707 (2014) (party opposing summary judgment bears burden of producing evidence demonstrating existence of genuine issue of material fact *only* with respect to issues raised in motion for summary judgment, and not with respect to issues first raised in a movant's reply memorandum). *See generally Eklof*, 360 Or at 730, 736.

The post-conviction court erred in granting summary judgment against petitioner's fourth claim in its entirety.

Judgment on petitioner's fourth claim reversed and remanded; otherwise affirmed.