Argued January 19, affirmed March 8, petition for rehearing
denied April 4, 1961

# STATE OF OREGON *v.* FICHTER

360 P. 2d 278

*Herbert Swift,* Newberg, argued the cause and filed briefs for appellant.

*James E. Craig,* District Attorney, McMinnville, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

SLOAN, J.

Defendant, and two others, were indicted for larceny from the person. ORS 164.340. Defendant was tried separately and convicted. This appeal is primarily directed at the court's failure to order a directed verdict of acquittal. The assignment complains basically of lack of evidence to show that defendant aided and abetted one of the other defendants in the crime charged. We will relate the facts before specific mention of the issues presented. In doing so we ignore defendant's denials of the facts stated. The evidence is to be viewed in the light most favorable to the state. *State v. Rosser,* 1939, 162 Or 293, 341, 86 P2d 441, 87 P2d 783, 91 P2d 295.

The events in question took place upon a secondary road near Grand Island, some miles south of Dayton, in Yamhill County, on the evening of August 3, 1959. Two boys, Ross Terrell, aged 15, and his brother Jack, aged 14, were walking along this road minding their own business. Each of them carried two sacks of groceries. The two boys worked on a nearby farm and batched in an apartment of some kind near the farm and were walking to the apartment with the just-pur-

chased groceries. Defendant, and his companions, Portwood and Grandy, were driving along this road headed for Portland, their place of residence. Defendant was about 19 years old, the other two apparently 18. They were all riding in defendant's car. He was driving. The three had left Portland earlier in the afternoon to visit girl friends of Portwood and Grandy living in the vicinity. When they passed the two Terrell boys defendant stopped the car and defendant, Grandy and Portwood got out. Grandy approached Ross Terrell, defendant and Portwood approached Jack Terrell. The two boys were backed to the opposite sides of the road. After limited conversation Ross heard his brother call to him and immediately Ross was struck about the head by Grandy. The blow stunned Ross and he remembered little that happened afterwards.

After Jack called to his brother he was struck on the mouth by either Portwood or defendant and knocked down. He then fled the scene. He returned to the grocery store where the boys had just purchased the groceries. One of the persons in the store called the sheriff and the state police; others started in pursuit of defendant and his companions.

In the meantime a witness by the name of Culp arrived at the scene of the action. He stopped his car behind defendant's parked car. The boy, Ross, came towards Culp's car "mumbling something". According to Culp, Grandy followed, removed Ross' glasses and started hitting the boy again. Grandy was joined by defendant and Portwood. Culp testified that then "they were all around Ross and a bunch of arms swinging and everything and Ross fell to the ground, and then two of the boys went back to the car and the fellow with the shorts on [Portwood] started gather-

ing up with a few things laying on the road, the groceries and they all got in the car and left." Culp made no attempt to interfere.

One of the men at the store, Keightley by name, took Jack Terrell in his car and started in pursuit. As they approached the scene they found Ross "stumbling alongside of the road." Keightley picked up Ross and again started his pursuit. He was able to catch and pass defendant's car; block the highway with his own car and force defendant to drive his car into a dead end lane leading to farm homes. Keightley then followed into the lane; again blocked the roadway and when defendant had turned his car around at the end of the lane and returned, he found the road blocked.

Keightley, and another witness, testified that defendant and Grandy made threats of violent reprisal against Keightley if he failed to remove his car. He did not do so. Eventually the officers arrived and the three defendants were taken into custody. One witness testified that while Grandy and Keightley were exchanging words defendant and Portwood re-entered defendant's car, backed it up about 60 feet and were seen throwing things from the car. Later this witness and the sheriff found several items of groceries in the grass and weeds at the place described by the witness.

We have mentioned defendant's denials. He did not deny being present at any part of the action but testified that before any blow was struck against the Terrell boys or any threats made at the scene of apprehension he had returned to and was sitting in his car. He denied knowing that Portwood had picked up the groceries; denied knowing that they were in the car; denied the flight from the scene and testified that he was trying to find the way to Portland and denied

throwing the groceries from the car as described by the other witness. As indicated, we cannot consider the denials other than as they create conflicts in the evidence.

■ There is not much dispute as to the law to be applied. Defendant makes some attempt to argue that a larceny from the person was not committed. There is no merit in that contention. The goods were taken from the conscious custody of the victims. They were taken without their consent, from their constructive possession and with the intent to permanently deprive them of the groceries. Ross Terrell, the actual owner of the groceries, was still immediately present when they were taken. It could not be said that he voluntarily relinquished his ownership or right to possession of them. *State v. Broom et al,* 1931, 135 Or 641, 645, 297 P 340; *State v. Reyner,* 1907, 50 Or 224, 91 P 302; 2 Bishop, Criminal Law, (9th ed, 1923) § 898; Clark and Marshall, Crimes, (5th ed, 1952) § 341.

The more persuasive argument is directed at a claimed lack of evidence that defendant was an accomplice or accessory before the fact of the larceny. Defendant forcibly contends that there was no evidence from which the jury could infer any intent upon the part of defendant to take the groceries at the time he stopped his car and the altercation started. To reach decision on this question it is necessary to review more of the evidence.

The three defendants left Portland about 3:30 or 4:00 p. m. Defendant had the car and no money. The other two had $2.00 which was used to buy gasoline. The events before described took place between 8:30 and 9:00 p. m. Defendant testified that he could see the boys were carrying sacks of something before he stopped the car. All three of them, defendant, Grandy

and Portwood, immediately got out of the car and approached the boys. Jack Terrell testified that before he was hit the two defendants accosting him asked if the boys' parents were there, what the boys had in the sacks and said "they were hungry." If defendant did not actually strike the boy, Jack, there was evidence that he participated in the threatening conduct towards the boy and direct evidence that he participated in the altercation with Ross which immediately followed. Despite defendant's denials we must accept as true that defendant personally engaged in the conduct that separated the boys from their groceries.

Consequently, the jury was left with two inferences to be drawn from the acts of the three defendants when they stopped the car and attacked the two boys. The jury could infer either that it was merely for the pleasure of beating up two smaller boys and for no other purpose, or that they stopped the car for the purpose of taking whatever the boys possessed—hoping it was food. The latter inference seems the more probable. It was a determination that the jury was required to make. It must be admitted, of course, that there was no direct evidence that defendant had an intent to commit larceny when he stopped the car.

However, it was clear that the car was stopped for some unlawful purpose. It would be ridiculous to say that the evidence permitted any inference that the three defendants stopped the two strange boys to engage in pleasantries. It is said in Clark & Marshall, Crimes, supra, § 183, that:

> "It is not always necessary, however, to render one guilty of a crime as a principal in the second degree or accessary before the fact, that he shall have *contemplated* or *expressly* assented to the commission of the particular crime. The general rule is that, if several persons combine or conspire to

commit a crime, or if persons command or counsel a crime, or aid and abet in an attempt to commit a crime, or if several engage in an unlawful enterprise, each is responsible as principal in the second degree or accessary before the fact, according to the circumstances, for all acts committed by the others in the execution of the common purpose, if such acts are a natural or probable consequence of the unlawful combination or undertaking."

Rapalje on Larceny and Kindred Offenses, 1892, § 11, says it is the "general rule that the least degree of concert or collusion between the parties to an illegal transaction makes the act of one of them the act of all. Thus where one watches while his confederates rob a house, or steal horses, all are equally guilty." In *State v. Weitzel,* 1937, 157 Or 334, 343, 69 P2d 958, this court by Justice BELT said:

"There was evidence of a conspiracy to commit a wrongful act. It is plain that these boys intended to 'gang up' on this girl. It may be that when they took her out to this secluded spot they did not contemplate committing the act of sodomy, but that is immaterial: State v. Goodloe, 144 Or. 193 (24 P.(2d) 28). It is sufficient that they had the common design of committing an unlawful act. If A and B enter into a conspiracy to rob a bank and, in furtherance of that common design, the cashier was shot and killed, can it reasonably be contended that both are not guilty of murder, although they originally contemplated only robbery?"

■ Defendant argues that the evidence was all circumstantial; that an inference to be drawn from circumstantial evidence will not sustain a verdict. We do not agree. Despite defendant's denial, there was direct evidence of his participation in acts of violence against the two boys. The court could not say as a matter of law that there was not a strong inference

created of an intent to steal or rob by defendant's participation in the acts of violence. Defendant also overlooks that it is only by his denial that there is any evidence that defendant did not know that Portwood picked up the groceries and put them in his car. It was for the jury to weigh the truth of that denial. The matter was submitted to the jury by careful instructions to which defendant did not and, indeed, could not except. It was proper to overrule the motion for directed verdict.

■ Another assignment asserts that it was error for the court to fail to give the following requested instruction:

"I instruct you that when the evidence fails to show, on the part of the accused, any motive to commit the crime or crimes charged, such lack of motive is a circumstance in favor of the innocence of the party accused, and in this case, if you find, upon a careful examination of all the evidence, that it fails to show any motive on the part of the Defendant to commit any or all of the crimes charged in the Indictment, then such failure to show motive should be considered by you as a circumstance in favor of his innocence and as supporting his claim that he did not participate in the offense or offenses for which no such motive appears."

Although it may have been proper to have given the requested instruction, the failure to give it could not have prejudiced defendant. There was actually little evidence of motive other than the evidence of Jack Terrell that one of the aggressors said they were hungry. The court otherwise gave very explicit instructions as to intent. Although the word "motive" was not used the jury had clear instructions that the state had to prove intent upon the part of defendant. The assignment is without merit.

What we have already said disposes of the assignment based on the court's failure to allow a new trial.

Defendant received a fair trial, carefully presided over by the trial court. The judgment must be affirmed.