Argued and submitted January 27, 1999, reversed in part; otherwise affirmed and remanded for resentencing January 5, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## CHRISTOPHER EARL ANLAUF,
*Appellant.*

(C962594CR; CA A97632)

995 P2d 547

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Diane L. Alessi, Interim Public Defender.

Christine Chute, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers,

Attorney General, Michael D. Reynolds, Solicitor General, and Tammy A. Hawkins, Assistant Attorney General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DEITS, C. J.

## DEITS, C. J.

Defendant and his accomplice, Scheidemantel, assaulted Skelton, a 14-year-old boy whom they encountered while he was walking and they were driving, on a public street. They apparently mistook him for someone else who was their intended victim. The two accomplices initially carried out the assault with fists and beer bottles. Toward the end of the episode, Scheidemantel exposed and threatened to use a knife that he carried in his pocket. However, he neither used the knife nor removed it from his pocket. There was no evidence that defendant knew that Scheidemantel was carrying the knife or that he directly participated in Scheidemantel's activities with the knife.

Defendant was charged with and convicted of second-degree assault, unlawful use of a weapon for the beer bottles, and unlawful use of a weapon for the knife. In his first assignment of error, defendant contends that the trial court erred by denying his motion for judgment of acquittal of the last charge. In his second assignment, he contends that the sentence imposed on the assault charge pursuant to ORS 137.700 violates various constitutional provisions. Defendant's second assignment of error is answered adversely by *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den* 522 US 994 (1997). We turn to the first assignment.

Under ORS 166.220, a person commits the crime of unlawful use of a weapon if the person "[a]ttempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon[.]" The state's theory was that defendant was guilty of that offense as an accomplice. Under ORS 161.155(2)(b), a person can be accountable on that theory if, *inter alia*, "with the intent to promote or facilitate the commission of the crime," the person "[a]ids or abets * * * [an]other person in planning or committing the crime." We have said that "mere presence at a crime is insufficient to establish aiding and abetting," and that "acquiescence alone is not sufficient to constitute aiding and abetting." However, "the least degree of concert or collusion between the accomplices suffices." *State ex rel Juv. Dept. v. Holloway*, 102 Or

App 553, 557, 795 P2d 589 (1990); *see also State v. Stark*, 7 Or App 145, 490 P2d 511 (1971).

Defendant asserts that, although he was a participant in the assault of Skelton, there was no evidence to link him to his accomplice's possession or use of the knife, or to show that he either intended to or did promote or facilitate Scheidemental's planning or commission of the unlawful use of the knife. Defendant and the state both rely principally on *Holloway*, *Stark*, and *State v. Moriarty*, 87 Or App 465, 742 P2d 704, *rev den* 304 Or 547 (1987). In our view, *Holloway* and *Moriarty* are not particularly helpful. Those cases deal more with the question of whether the defendant in one, and the juvenile in the other, aided and abetted *any* of the charged criminal activity in which the putative accomplices engaged. The question here, by contrast, is whether defendant could be found to have been culpably involved in a particular aspect of the criminal activity when, for purposes of this appeal at least, it is undisputed that he was a direct participant in the overriding criminal episode.[1]

*Stark* is more pertinent. The defendant and his companions in that case stopped their car and assaulted two persons who were attempting to hitchhike. During the course of the encounter, one of the companions, Hansen, demanded and took the wallet of one of the hitchhikers. The defendant was charged with and convicted of unarmed robbery arising out of the theft of the wallet. On appeal, he assigned error to the trial court's instructions on the robbery charge, contending that they would have allowed the jury to convict him of robbery without finding the requisite connection between him and *that* aspect of Hansen's conduct. We disagreed, explaining:

"This instruction complained of contained the words, 'common criminal intent or purpose.' This adequately covers the requisite mental element. Defendant's argument

---

[1] *State v. Fichter*, 226 Or 526, 360 P2d 278 (1961), on which the state relies, also is not on point. The decisive issue there was whether the jury could permissibly have found that stealing the victims' property, rather than or in addition to simply assaulting them, was part of the *common* purpose of the defendant and his accomplices. *Fichter's* value as authority must also be considered in light of the fact that it was decided before the adoption of the Criminal Code of 1971 and turns on the antiquated distinction between "principals in the first and second degree."

would disregard this language on the basis that the common criminal intent or purpose may have been construed by the jury as applicable to the assault. While such a construction is conceivable, it is unlikely. * * *

"The defendant also contends that acquiescence alone as used in the same part of the instructions is not sufficient to constitute aiding and abetting. We agree. However, the instructions did not say that acquiescence alone was sufficient to make Stark an accomplice. Rather, the court instructed the jury that:

" 'If you should find that the defendant, Mr. Stark, was present at the commission of the robbery, rendering it countenance and encouragement, and ready to assist Mr. Hansen, should the necessity arise * * *';

"and also

" '* * * and if both united or cooperated in any way to aid or carry out the crime * * *.';

"Both of these segments tell the jury that the defendant would have had to do more than acquiesce in the unarmed robbery." *Stark*, 7 Or App at 151-52.

In summary, although we disagreed with the particulars of the defendant's argument, we did accept his underlying proposition that the jury had to find the necessary specific link between him and the robbery, apart from the assault or the criminal episode generally, in order to convict him on the robbery charge. We also made clear, however, that the defendant could be found guilty of the robbery upon a showing of any collusion in *its* commission.

■■ The case that we find the most analogous is *State v. Hightower*, 17 Or App 112, 520 P2d 470 (1974). There, the defendant and his accomplice, Sage, burglarized a restaurant for the apparent principal purpose of committing theft. However, while in the building, Sage picked up a knife and attacked the proprietor with it. The use of the knife increased the seriousness of Sage's crime from second- to first-degree burglary, and the defendant was charged also with first-degree burglary. The defendant moved for acquittal on the more serious charge, contending that he had no connection with and "could not be held criminally liable for Sage's use of a knife." *Id.* at 115. The trial court denied the motion, the

defendant was convicted of first-degree burglary, and he assigned error on appeal to the denial of his motion. We affirmed, and explained:

"The evidence of defendant's actions after Sage picked up and used the knife supports a factual finding that he continued to aid and abet Sage thereafter, and became an accomplice in what Sage thereafter did, despite any protests he may have made to Sage as to what his conduct should be.

"Defendant, in fleeing the café, took the money he previously found. After reaching his apartment he divided this money with Sage. Sage committed first degree burglary in that he used the knife. Defendant aided and abetted Sage's crime by taking the proceeds of the burglary from the store. As such, he did more than merely acquiesce in Sage's commission of the crime—he actively aided him. *State v. Stark*, 7 Or App 145, 152, 490 P2d 511 (1971). Under ORS 161.155 defendant's actions in aiding Sage make him liable for the crime Sage committed. *See also State v. Fichter*, 226 Or 526, 532, 360 P2d 278 (1961); *State v. Cantrell*, 1 Or App 454, 455, 463 P2d 593 (1970)." *Hightower*, 17 Or App at 115-16.

Conversely, defendant argues here:

"In this case defendant and co-defendant approached Skelton and did assault him together. It was inferable that they were in concert in advancing on Skelton, in intimidating Skelton, and in hitting Skelton. Co-defendant acted alone, though, when he carried a knife and partially displayed the knife. At this point defendant was trying to retreat from the altercation; there is no evidence he saw the knife, knew co-defendant had the knife, or in any way encouraged co-defendant to carry or display the knife. There is also no evidence co-defendant was known to carry a knife or to even possess a knife such that co-defendant's actions could have been predicted. There is simply no evidence in this record on which to base accomplice liability for co-defendant's knife possession."[2]

We agree with defendant. The *only* evidence regarding his direct connection with the events involving the knife

---

[2] By juxtaposing the quoted passage from defendant's brief with our discussion of *Hightower* in this opinion, we do not imply that defendant makes the argument in a specific effort to distinguish the two cases. Neither party relies on *Hightower*.

was Skelton's testimony that, at the time Scheidemantel exposed and threatened to use the weapon, defendant was "trying to get [Scheidemantel] to calm down." There was no evidence that defendant engaged in any further criminal activities with Scheidemental after the knife came into play, other than fleeing from the scene, and there was no evidence that defendant knew about the knife before it came into play. The state attempts to fill the void with arguments that it describes as pertaining to "circumstantial evidence" and "inferences." It is of course true that "circumstantial" as well as direct evidence can prove guilt, but there was no circumstantial evidence here that would permit the jury to find that defendant was guilty of unlawful use of the knife. We note, in particular, that we do not agree with the state's assertion that defendant's knowledge of Schiedemantel's "gang affiliations," and the putative gang-related motives for the assault, were sufficient to permit the inference that defendant knew that his companion was likely to be armed with a dangerous weapon. The state cites nothing for that proposition, and we rejected the state's similar guilt-by-innuendo argument in *Holloway*.

The state also relies on the Supreme Court's statement in *Fichter* that all conspirators, including aiders and abettors, who engage in an unlawful enterprise are responsible "for all acts committed by the others in the execution of the common purpose, if such acts are a natural or probable consequence of the unlawful combination or undertaking." 226 Or at 531-32. Leaving aside the other questions that we have noted about the vitality and relevance of *Fichter, see* note 1, we think that the state misreads the *dictum* that it relies on to mean that all acts by any of the conspirators are, *ipso facto,* natural and probable consequences of the unlawful combination or undertaking. Insofar as the state's theory is that guilt, as an aider or abettor under ORS 161.155, can be predicated on a coconspirator's commission of a *separate crime* to which the defendant is in no way tied, except that the crime occurred during the course of the common criminal episode, *Hightower* and *Stark* are to the contrary. *See also, e.g., State ex rel Juv. Dept. v. Arevalo,* 117 Or App 505, 844 P2d 928 (1992), *rev den* 315 Or 643 (1993). There was nothing to link defendant to the knife offense here except his "mere

presence" when it occurred. There simply is no evidence here from which a trier of fact could draw reasonable inferences to support a finding that defendant committed the essential elements of the crime of unlawful use of the knife. We conclude that the trial court erred by denying defendant's motion for a judgment of acquittal of that offense.

Conviction on Count 3 reversed; otherwise affirmed and remanded for resentencing.