DEHOOG, P. J.
*1146 *755 Petitioner appeals the denial of her petition for post-conviction relief from her 2008 convictions for 12 counts of second-degree assault and two counts of fourth-degree assault. Petitioner raises three challenges to the post-conviction court's ruling, each asserting that the court erred in denying her relief based on her trial counsel's deficient performance. We write only to address petitioner's first assignment of error, relating to trial counsel's failure to object to the trial court's issuance of an erroneous "natural and probable consequence" jury instruction in connection with the state's theory of accomplice liability.[1] As we explain below, petitioner has failed to establish that counsel's purportedly deficient performance prejudiced her; accordingly, we affirm.
In 2008, petitioner and her husband, Drown, lived with their nine youngest children, who ranged in age from a few months to 16 years old. Drown physically abused petitioner, and both Drown and petitioner resorted to corporal punishment to discipline their children. That practice led to petitioner's prosecution for 14 counts of second-degree assault based on the use of various objects-including a board and a tent pole-to punish the seven older children.[2] As we described in our earlier decision:
"[Petitioner] and Drown were tried together, before a jury. In support of the assault counts, the state presented evidence that, over the years, *** the oldest seven of the nine children were punished by being repeatedly struck with objects on their buttocks, the backs of their legs, and their arms. The children suffered pain, bruising, cuts, and scars as a result. The punishments were frequent and severe. Several of the children testified that each beating involved numerous blows, ranging between 'five and 100s,' depending on the severity of the infraction for which the child was being punished.
*756 "* * * * *
"[Petitioner] advanced a duress defense; she presented evidence that Drown had severely abused her-verbally and physically-throughout their marriage. She testified that, after repeated attempts to escape the marriage, she eventually came to believe that her only way to save her life and her children's lives was to submit to Drown's wishes. The children who testified at trial agreed that Drown was the source of the violence in their family and that, although defendant also inflicted corporal punishment, she did so less often, less forcefully, and pursuant to Drown's will. The children also testified that, when defendant tried to intercede on their behalf, Drown punished her."
State v. Drown , 245 Or. App. 447, 450-52, 263 P.3d 1057, rev. den. , 351 Or. 401, 268 P.3d 152 (2011) (footnote omitted).
At the conclusion of trial, the court gave the jury three instructions regarding accomplice liability. The first instruction provided:
"A person who is involved in committing a crime may be charged and convicted of that crime if, with the intent to promote or facilitate commission of the crime, that person aids or abets someone in committing the crime. Under these circumstances, it is not necessary for that person actually to be personally present at the time and place of the commission of the crime."
The second jury instruction stated:
"A person aids or abets another person in the commission of a crime if the person:
"(1) With the intent to promote or make easier the commission of the crime,
"(2) Encourages, procures, advises, or assists, by act or advice, the planning or commission of the crime."
Finally, the third instruction-the only one at issue in this appeal-stated:
"A person who aids and abets another in committing a crime, in addition to being criminally responsible for the crime that is committed, is also criminally responsible *1147 for any acts or other crimes that were committed as a natural and probable consequence of the planning, preparation, or commission of the intended crime."
*757 Ultimately, the jury convicted petitioner of 12 counts of second-degree assault and two counts of the lesser-included offense of fourth-degree assault.
Following her direct appeal, petitioner timely filed a petition for post-conviction relief. Petitioner's claims for relief included an allegation that trial counsel had been inadequate and ineffective for failing to object to the natural-and-probable-consequence instruction. At the post-conviction proceeding, the state offered an affidavit from petitioner's trial counsel that addressed counsel's failure to object to that instruction. Trial counsel stated:
"3. I was unaware at the time of petitioner's trial of any argument that the uniform criminal jury instruction regarding natural-and-probable-consequences liability incorrectly stated the law. I was unaware of the decision in State v. Anlauf , 164 Or. App. 672, 995 P.2d 547 (2000). I also do not believe that I would have connected the Anlauf decision to this case, even if I had been aware of it generally, because it involved the sufficiency of the evidence for unlawful use of a weapon, and because the facts and issue in Anlauf related to a defendant contending he was unaware of his co-defendant's actions, while petitioner was knowledgeable and aware of her husband's actions, and the evidence also was that she herself committed assaults on her children.
"* * * * *
"5. Before and during the trial, I understood the State's theory of the case for each count of second-degree assault to be that petitioner either personally assaulted the relevant child or intentionally aided and abetted her husband's assault of the relevant child. I did not ever understand the State to argue that petitioner intended to aid and abet any crime other than second-degree assault."
Ultimately, the post-conviction court denied relief, concluding that there was no inadequacy of counsel or prejudice, based on the following findings:
"Trial attorney admits he was not familiar [with] the Anlauf case, but even if he were, in 2008, it would be reasonable to think it did not apply under these facts. [Petitioner] was charged in [Counts] 4, 6, 8-10 with *758 personally assaulting the children and in [Counts] 1, 2, 3, 5, 7, 11-14 with assisting her husband in those assaults. There was no question that she witnessed and knew about her husband's assaults. That distinguishes this case from [ Wade v. Brockamp , 268 Or. App. 373, 342 P.3d 142 (2015) ]. It was reasonable for the attorney to believe the instruction was proper or harmless."
Petitioner appeals that denial.
We review post-conviction proceedings for errors of law, accepting the post-conviction court's findings of historical fact if evidence in the record supports them. Green v. Franke , 357 Or. 301, 312, 350 P.3d 188 (2015). "If the post-conviction court failed to make findings of fact on all the issues-and there is evidence from which such facts could be decided more than one way-we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." Id.
Both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution protect a criminal defendant's right to counsel. Id. at 311, 350 P.3d 188. The Supreme Court has recognized that "the standards for determining the adequacy of legal counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution." Montez v. Czerniak , 355 Or. 1, 6-7, 322 P.3d 487, adh'd to as modified on recons. , 355 Or. 598, 330 P.3d 595 (2014). Both constitutions provide a right " 'not just to a lawyer in name only, but to a lawyer who provides adequate assistance.' " Id. at 6, 322 P.3d 487 (quoting State v. Smith , 339 Or. 515, 526, 123 P.3d 261 (2005) ). Accordingly, a petitioner may raise a challenge to the constitutional adequacy of his or her counsel's assistance on post-conviction review. See ORS 138.530(1)(a). "To prevail on a post-conviction *1148 claim of inadequate assistance of counsel, the burden is on the petitioner to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudice as a result." Lambert v. Palmateer , 182 Or. App. 130, 135, 47 P.3d 907 (2002), adh'd to as modified on recons. , 187 Or. App. 528, 69 P.3d 725, rev. den. , 336 Or. 125, 79 P.3d 882 (2003). *759 Because it is dispositive of petitioner's appeal, we focus on whether petitioner suffered prejudice as a result of her trial attorney's alleged inadequacy. As noted, a claim of inadequate assistance of counsel requires the petitioner to show prejudice. See id. (a petitioner must show both deficient performance and prejudice to prevail). And, to demonstrate prejudice, a petitioner must show that " 'counsel's failure had a tendency to affect the result of his trial.' " Montez , 355 Or. at 7, 322 P.3d 487 (quoting Lichau v. Baldwin , 333 Or. 350, 359, 39 P.3d 851 (2002) ); see also Green , 357 Or. at 322, 350 P.3d 188 ("[T]he tendency to affect the outcome standard demands more than mere possibility, but less than probability."). As we have explained, "[t]hat determination involves an extensive consideration of the evidence presented by both the state and petitioner at the criminal trial, as well as any other aspects of the criminal trial that are pertinent to the issue considered in light of the issues at trial in their entirety." Maney v. Angelozzi , 285 Or. App. 596, 614, 397 P.3d 567 (2017) (internal quotation marks and alterations omitted).
Here, in light of the state's theory at trial and the evidence presented, we conclude that petitioner has not shown that counsel's failure to object to the natural-and-probable-consequence instruction had a tendency to affect the outcome of her trial. As a result, petitioner has not demonstrated prejudice arising from the alleged inadequacy of her trial counsel, and the post-conviction court, therefore, did not err in denying relief.
As set out above, the since-disapproved natural-and-probable-consequence instruction imposes liability on a defendant for "any acts or other crimes that were committed as a natural and probable consequence of the planning, preparation, or commission of the intended crime ."[3] (Emphasis added.) By its terms, the instruction subjects a *760 defendant to liability for conduct occurring after the defendant aids or abets another in committing an initial offense; that is, it "also" imposes liability for "acts or other crimes that [are] committed" in addition to the "intended crime." Based on that understanding, we have previously explained that, to determine whether the natural-and-probable-consequence instruction could have affected the jury's verdict, we must determine whether, "in light of the parties' evidence and arguments, 'the jury's guilty verdict on one or more of the charges could have been based on the theory of criminal responsibility contained in the erroneous instruction.' " State v. Valerio , 269 Or. App. 770, 776, 346 P.3d 498 (2015) (quoting State v. Lopez-Minjarez , 350 Or. 576, 585, 260 P.3d 439 (2011) ; considering issue in the context of harmlessness on direct appeal). Stated differently, "for each charged crime, we must determine whether the jury could have found the defendant guilty of the crime on the theory that the crime was a natural and probable consequence of an earlier crime in which the defendant had aided or abetted." Id. That inquiry requires that we first identify in time the initial, intended crime for which the jury could have found the defendant guilty based on an ordinary accomplice theory. Id. That is because "to trigger criminal responsibility under the erroneous instruction, the jury first had to find defendant guilty of at least one predicate crime on an accomplice (i.e. , aiding and abetting) *1149 theory." Lopez-Minjarez , 350 Or. at 585, 260 P.3d 439.
Having conducted that inquiry in petitioner's case, we conclude that there was no theory by which the jury could have found her guilty of a crime that was a natural and probable consequence of an earlier, intended crime that petitioner had aided or abetted Drown in committing. The evidence showed that petitioner and Drown regularly assaulted the seven older children throughout the indictment period. Neither party presented any evidence or advanced any theory that suggested the commission-or intended commission-of one or more predicate assaults, from which the other alleged assaults had flowed as natural and probable consequences. As a result, petitioner cannot have been prejudiced by her attorney's failure to object to the defective instruction.
*761 Petitioner's argument to the contrary is unavailing. According to petitioner, the erroneous instruction permitted the jury to find her guilty, "not because she committed the assaults or aided and abetted the assaults, but because a natural and probable consequence of her being present at the time of the assaults was that the assaults occurred." That, however, is not what the instruction allowed. As we have just explained, the natural-and-probable-consequence instruction that the trial court gave could only have impermissibly subjected petitioner to extended liability if the jury first found that petitioner was guilty on an accomplice basis of at least one predicate offense. That, again, is because liability under the natural-and-probable-consequences instruction is in addition to accomplice liability for an earlier offense.
Here, given the evidence presented and the arguments made, the jury could not have found petitioner guilty of any of the charged crimes on a theory that the crime was a natural and probable consequence of an earlier crime. Petitioner, therefore, has not demonstrated that her trial counsel's failure to object to the erroneous instruction had any tendency to affect the verdict in her case. Without that showing, petitioner's claim of inadequate assistance of counsel fails, and, as a result, the post-conviction court did not err in denying relief on that ground.
Affirmed.

We reject the balance of petitioner's assignments of error without discussion.

Petitioner was also charged with 11 counts of first-degree criminal mistreatment. The jury found petitioner not guilty on two of the criminal mistreatment counts, and this court reversed eight of the remaining counts on direct appeal. The remaining conviction for criminal mistreatment is not at issue in this appeal.

In State v. Lopez-Minjarez , 350 Or. 576, 260 P.3d 439 (2011), the Supreme Court concluded that the natural-and-probable-consequence instruction misstated the law. Specifically, the court observed that the natural-and-probable-consequence instruction exceeded the limits of accomplice liability under ORS 161.155. Id. at 583, 260 P.3d 439. Here, as in Wade , 268 Or. App. 373, 342 P.3d 142, petitioner's trial took place several years before Lopez-Minjarez but well after Anlauf , 164 Or. App. 672, 995 P.2d 547, and, in Wade , we concluded that trial counsel had failed to exercise professional skill and judgment when he failed to object to the natural-and-probable-consequence instruction.