**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN NEIL WIGGINS,

    Defendant - Appellant.

No. 25-8002
(D.C. No. 2:24-CR-00070-SWS-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS** and **McHUGH**, Circuit Judges, and **VRATIL**, District Judge.[**]

_____

Defendant-Appellant Brian Neil Wiggins appeals his 192-month sentence for

firearm and drug offenses. Mr. Wiggins's sentence rested in part on the district

court's conclusion that he was a career offender under § 4B1.1 of the U.S. Sentencing

Commission Guidelines because he had at least two prior convictions of either a

crime of violence or a controlled substance offense. One of Mr. Wiggins's prior

convictions was second-degree assault under Oregon law. On appeal, Mr. Wiggins

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[**] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

argues that the district court erred when it held that second-degree assault in Oregon was a crime of violence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## I.    LEGAL FRAMEWORK

The parties dispute whether the district court erred in concluding that Mr. Wiggins's prior second-degree assault conviction was a crime of violence. Because an understanding of the legal framework is necessary to put the parties' arguments and the district court proceedings in context, we begin with an overview of that legal background. In particular, we set forth the law surrounding the designation of a conviction as a crime of violence and the elements of the Oregon assault statute under which Mr. Wiggins was previously convicted. Then, we turn to the factual and procedural history.

### A.    Crime of Violence

Under U.S.S.G. § 4B1.1(a), a defendant is a "career offender" if, among other things, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The Guidelines define a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

2

U.S.S.G. § 4B1.2(a). The first of these definitions is called the "elements clause," and the second is the "enumerated clause." *United States v. Devereaux*, 91 F.4th 1361, 1363 n.4 (10th Cir. 2024) (quotation marks omitted).

To determine when a past offense qualifies as a crime of violence, courts employ the "categorical approach," which "focuses on the elements of the prior offense of conviction and not on the defendant's actual conduct underlying that prior conviction." *Id.* at 1364. Under this approach, "[i]f any—even the least culpable—of the acts criminalized" do not meet the federal definition, "the statute of conviction does not categorically match the federal standard" and cannot be counted as a crime of violence under federal law. *United States v. Sanchez*, 13 F.4th 1063, 1078 (10th Cir. 2021) (quoting *Borden v. United States*, 593 U.S. 420, 424 (2021)). Thus, the court considers the least culpable conduct that could violate the statute to determine whether it is a crime of violence under either the elements or enumerated clause of the Guidelines definition.

A variation of this rule applies if the statute can be divided into separate crimes—meaning it "sets out one or more of the elements in the alternative, *e.g.*, burglary involving entry into a building or an automobile." *Descamps v. United States*, 570 U.S. 254, 257 (2013). This "modified categorical approach" "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* The court then compares the elements of the crime of conviction with the federal crime-of-violence definition, again assessing whether the

least culpable conduct necessary to violate the particular section under which the defendant was convicted is a crime of violence.

### B.    Oregon Assault Statute

Under Oregon law, second-degree assault is defined as:

(a) Intentionally or knowingly caus[ing] serious physical injury to another;

(b) Intentionally or knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon; or

(c) Recklessly caus[ing] serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.

Or. Rev. Stat. § 163.175(1) (2005). The parties agree that the current version of the statute was in place when Mr. Wiggins was convicted in 2008. The parties disagree as to whether and how the statute is divisible.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In March 2024, a confidential source informed Wyoming law enforcement agents that Mr. Wiggins regularly carried a firearm and was selling "large amounts of methamphetamine and fentanyl." ROA Vol. II at 43. The agents discovered that Mr. Wiggins was on parole in Casper, Wyoming, and that he had an upcoming meeting with his parole officer. When Mr. Wiggins arrived for that meeting, officers detained him and searched his truck. They later searched his apartment, too. Their searches revealed multiple firearms, baggies of methamphetamine and fentanyl, and drug paraphernalia.

Based on these events, a grand jury in the District of Wyoming indicted Mr. Wiggins on six counts of firearm and drug offenses. Mr. Wiggins pleaded guilty

4

to three of them—two counts of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

### A.    Presentence Report's Career-Offender Enhancement

After Mr. Wiggins pleaded guilty, a probation officer filed a presentence investigation report ("PSR") that calculated Mr. Wiggins's Guidelines range. The PSR concluded that Mr. Wiggins was a "career offender" under U.S.S.G. § 4B1.1 because he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." ROA Vol. II at 45 (quoting U.S.S.G. § 4B1.1(a)(1)–(3)). Specifically, the PSR noted that Mr. Wiggins had previously been convicted in Oregon of first-degree robbery and intent to distribute a controlled substance. The career offender designation increased the calculation of Mr. Wiggins's Guidelines range from 100 to 125 months to 188 to 235 months.

Mr. Wiggins objected to the PSR's career-offender determination. Although he did not dispute that he previously committed a controlled substance offense, he argued that first-degree robbery under Oregon law did not meet the Guidelines' definition of a crime of violence.

The Government did not directly respond to Mr. Wiggins's robbery argument. It instead argued that Mr. Wiggins was a career offender regardless of his robbery conviction because, in addition to his controlled substance offense, he had been convicted of second-degree assault under Oregon law in 2008. The Government contended that a conviction under Oregon's second-degree assault statute, Or. Rev.

Stat. § 163.175, categorically qualifies as a crime of violence because the statute does not criminalize any conduct that would fall outside the Guidelines' crime-of-violence definition. The Government further argued that even if the statute considered as a whole could encompass conduct that would not qualify as a crime of violence under the categorical approach, the statute creates three separate, divisible paths to liability for second-degree assault described in the individual subsections. And the Government argued that subsection (b), the subsection of the statute under which Mr. Wiggins was convicted, does not criminalize any conduct that could fall outside the definition of a crime of violence. Instead, it criminalizes "[i]ntentionally or knowingly caus[ing] physical injury to another by means of a deadly or dangerous weapon." Or. Rev. Stat. § 163.175(1)(b) (2005).

Mr. Wiggins disagreed. He argued that Oregon's second-degree assault statute was not divisible and that it swept more broadly than the Guidelines' definition of crime of violence. In other words, he argued that it criminalized conduct that did not involve "the use, attempted use, or threatened use of physical force against the person of another." ROA Vol. II at 71 (quoting U.S.S.G. § 4B1.2(a)(1)). According to Mr. Wiggins, Oregon's second-degree assault statute did not meet the mens rea requirement for a crime of violence because it criminalized negligent conduct. In support, he relied on a case from the District of Oregon, *Tristan v. United States*, Nos. 16-1137, 13-0542, 2018 WL 3117637 (D. Or. June 25, 2018), in which the court held that Oregon's second-degree assault statute is not a crime of violence because the definition of "knowing" under Oregon law does not require "an intent to cause

6

physical injury or knowledge that physical injury will result," and because the statute permitted accomplice liability on conduct that would not meet the Guidelines' definition of a crime of violence. ROA Vol. II at 91–92 (quoting *Tristan*, 2018 WL 3117637 at *4, 7–8).[1]

In the alternative, Mr. Wiggins argued that even if the statute were divisible according to principal and accomplice liability, the documents the court could consider—like the "indictment, jury instructions, or plea agreement and colloquy"—did not clearly show the theory under which he was convicted. *Id.* at 94 (quoting *Devereaux*, 91 F.4th at 1365). So, he argued that any overbreadth in the statute precluded classifying his second-degree assault conviction as a crime of violence.

---

[1] On appeal, Mr. Wiggins argues only that Oregon's second-degree assault statute fails to constitute a crime of violence because it permits conviction as an accomplice for negligent conduct. Accordingly, we do not consider the question of whether the definition of "knowingly" in this statute permits convictions that could fall outside the definition of a crime of violence under U.S.S.G. § 4B1.2. *See Day v. SkyWest Airlines*, 45 F.4th 1181, 1189 n.6 (10th Cir. 2022) (declining to address issues not raised on appeal). We leave that question for another day. *Compare State v. Barnes*, 986 P.2d 1160, 1166 (Or. 1999) (explaining that "the definition of 'knowingly' addresses only 'conduct' and 'circumstances' and does not also include a reference to 'result,'" thereby requiring no mens rea as to result), *overruled in part by State v. Owen*, 505 P.3d 953 (Or. 2022) (holding that Oregon's assault statute requires at least a mens rea of negligence as to result), *with Borden v. United States*, 593 U.S. 420, 426 (2021) (noting that under federal law a person "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire"). *See also United States v. Sjodin*, 139 F.4th 1188, 1203 (10th Cir. 2025) (applying *Borden* and holding that California's assault statute's mens rea requirement "simply spans too wide on the 'culpability spectrum' to constitute a crime of violence" because it permits convictions that lack "a specific intent to cause injury or a subjective awareness of the risk that an injury might occur" (quotation marks omitted)).

### B.    Sentencing

The district court overruled Mr. Wiggins's objection to the PSR and concluded he was a career offender under U.S.S.G. § 4B1.1. The court agreed with the Government that regardless of whether Oregon's second-degree assault statute was divisible according to its three subsections, the statute did not encompass any conduct beyond the Guidelines' crime-of-violence definition.

Ultimately, however, the district court concluded that Oregon's second-degree assault statute was divisible between accomplice liability and principal liability. Nonetheless, the district court determined that the "indictment, informations, verdict form, and judgment," sufficiently showed that the jury found Mr. Wiggins guilty as a principal and not an accomplice. *Id.* at 45–46. Accordingly, the district court rejected Mr. Wiggins's argument that the elements of second-degree assault as an accomplice could cause his second-degree assault conviction to fall outside the Guidelines' crime-of-violence definition. *Id.* at 45. The district court thus overruled Mr. Wiggins's objection to the PSR's conclusion that he was a career offender under § 4B1.1, finding he had previously committed both a crime of violence and a controlled substance offense. Because § 4B1.1 requires only two qualifying convictions, the district court did not decide whether Mr. Wiggins's first-degree robbery conviction under Oregon law also qualified as a crime of violence.

The district court sentenced Mr. Wiggins to 192 months' imprisonment. Mr. Wiggins timely appealed.

## III.    DISCUSSION

Mr. Wiggins contends that the district court erred by counting his Oregon second-degree assault conviction as a crime of violence, which increased the Guidelines range on which the district court based his sentence. Mr. Wiggins first argues that the district court erred when it held that Oregon's second-degree assault statute is divisible between principal and accomplice liability. Then, Mr. Wiggins argues that when he was convicted in 2008, Oregon law permitted accomplice liability based on negligence, which is insufficient for an offense to qualify as a crime of violence. Mr. Wiggins was unable to locate a copy of the jury instructions actually given in his 2008 trial. Thus, to support his interpretation of Oregon law in 2008, Mr. Wiggins relies solely on a pattern jury instruction that some Oregon courts still used at the time he was convicted. The instruction told juries that they could find a defendant guilty of second-degree assault as an accomplice so long as the assault was a "natural and probable consequence" of the crime the defendant intended to aid and abet. Because that mens rea is insufficient to support a crime of violence, Mr. Wiggins claims he does not qualify as a career offender.

The Government agrees with Mr. Wiggins that the Oregon assault statute is not divisible as between principal and accomplice liability. But the Government rejects the accomplice liability distinction raised by Mr. Wiggins as irrelevant and states that "aiding and abetting is not a separate crime requiring elements be proven beyond a reasonable doubt in order to be convicted." Appellee's Br. at 1–2. Instead, the Government contends that it is "a theory of criminal liability which this court should

9

not consider when analyzing the statute of conviction to determine if it is a crime of violence." *Id.* at 2. In the Government's view, the statute is properly divided according to its subsections, and each of those subsections meets the mens rea requirement necessary to qualify as a crime of violence.

Because Mr. Wiggins's argument prevails or fails based on his argument that in 2008, the Oregon assault statute could be violated by an accomplice acting with negligence, we need only consider that issue.

### A.    Standard of Review

"This court reviews de novo the question of whether a prior conviction qualifies as a crime of violence under the Guidelines." *Devereaux*, 91 F.4th at 1364 (internal quotation marks and brackets omitted). However, where a defendant challenges a district court's interpretation of the Guidelines based on an argument the defendant did not raise in the district court, de novo review is inappropriate, and we instead review for plain error. *United States v. Ruiz-Gea*, 340 F.3d 1181, 1185, 1187 (10th Cir. 2023); *see also United States v. Taylor*, 514 F.3d 1092, 1096 (10th Cir. 2008) ("[W]here a party seeks on appeal to raise an issue not squarely presented to the district court in order to allow it to exercise its judgment in the first instance . . . we traditionally review only for plain error.").

The Government contends that plain-error review applies because Mr. Wiggins forfeited his argument that his offense was not a crime of violence based on Oregon's 2008 pattern jury instructions, and that he subsequently waived that argument by failing to argue plain-error review in his opening brief here. First, the Government

10

asserts that Mr. Wiggins forfeited the argument before the district court because "the only mention of the flawed natural and probable consequence pattern jury instruction is in the order in *Tristan* that [Mr.] Wiggins attached to his pleading." Appellee's Br. at 6 (citing ROA Vol. II at 145–47). According to the Government, Mr. Wiggins did not preserve his argument for appeal because he did not specifically mention the pattern jury instruction at the sentencing hearing or in his written objection to the PSR, so "the district court did not address this theory either in its oral ruling or its written order." *Id.* at 6 (citing ROA Vol. I at 37–49, and then citing ROA Vol. III at 51–54). Second, the Government argues that Mr. Wiggins waived his argument on appeal because he did not provide a plain-error analysis in his opening brief.

We disagree and conclude that Mr. Wiggins preserved his argument. In his objection to the PSR's career-offender determination, Mr. Wiggins invoked *Tristan*. There, the District of Oregon held that the natural and probable consequences jury instruction permitted convictions based on negligence until three years after Mr. Wiggins's conviction. *Tristan*, 2018 WL 3117637, at *8. Accordingly, Mr. Wiggins offered it for the proposition that a conviction under Oregon's second-degree assault statute was not a crime of violence. At the sentencing hearing, the parties discussed *Tristan's* reasoning that an accomplice to second-degree assault could be convicted on elements that fall below that required for a crime of violence under the Guidelines. And the district court subsequently issued a written order overruling Mr. Wiggins's objection to the PSR, where it explained that in *Tristan* the court "ultimately hung its hat on whether accomplice liability for Second-Degree

11

Assault in Oregon, prior to 2011, would meet the definition of 'crime of violence' and determined possible accomplice liability makes Second-Degree Assault in Oregon overbroad." ROA Vol. I at 43 (footnote omitted). Because the district court concluded that the statute was divisible according to principal and accomplice liability, and Mr. Wiggins was convicted as a principal—a conclusion that Mr. Wiggins appeals—it did not need to reach whether the statute encompassed conduct falling below the crime-of-violence definition based on a theory involving accomplice liability. Accordingly, the district court had the opportunity "to evaluate [the] legal issue in light of its factual context, and to develop the factual record necessary to resolve it—an opportunity to address the issue in the first instance, and to avoid errors while they are still avoidable." *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1329 (10th Cir. 2003). De novo review is therefore appropriate.

### B.    Analysis

According to Mr. Wiggins, Oregon's second-degree assault statute is not divisible between principal and accomplice liability. Thus, if either theory could result in a conviction for conduct less culpable than a federal crime of violence, he could not be sentenced as a career offender.

Mr. Wiggins argues that, in 2008, Oregon law permitted convictions for second-degree assault as an accomplice based on merely negligent conduct, which would place the statute outside the Guidelines' definition of a crime of violence. His source for this interpretation of Oregon law is a statement of accomplice liability that at one time appeared in Oregon's pattern jury instructions. The instruction provided

12

"that a person who aids and abets in the commission of a crime, in addition to being criminally responsible for that crime, also is criminally responsible for 'any act or other crime' that was the 'natural and probable consequence' of the intended crime." *State v. Lopez-Minjarez*, 260 P.3d 439, 443 (Or. 2011) (quoting Or. Uniform Criminal Jury Instr. 1051 (2011)).

The Oregon Supreme Court has since held that Oregon law does not permit an accomplice liability conviction based on mere negligence, but Mr. Wiggins contends that the pattern jury instruction represents Oregon law at the time he was convicted in 2008. Thus, Mr. Wiggins contends his conviction is not a crime of violence that could qualify him as a career offender. Because we conclude Oregon had abandoned that definition of accomplice liability well before Mr. Wiggins's conviction, we disagree.

In 2011, the Oregon Supreme Court held that the pattern jury instruction on which Mr. Wiggins relies "incorrectly advises that a defendant can be criminally responsible for any other crime that is a natural and probable consequence of a crime that a defendant aided in committing." *Id.* at 447–48. Mr. Wiggins agrees but argues that a 2011 decision cannot represent what Oregon law permitted at the time of his 2008 conviction.

In *Lopez-Minjarez*, however, the Oregon Supreme Court did not break any new ground. *See Wade v. Brockamp*, 342 P.3d 142, 151 (Or. Ct. App. 2015) ("In *Lopez-Minjarez*, the court did not 'reverse course,' but instead concluded that the natural and probable consequence instruction was inconsistent with the statutory language of

13

[Or. Rev. Stat. Ann. § 161.155]."). The court simply applied the plain text of Oregon's accomplice liability statute to hold that the natural and probable consequences pattern jury instruction was wrong, even *at the time* Mr. Wiggins was convicted. It explained that Oregon law permits accomplice liability "only for the crime that a defendant intended to promote or facilitate, not for any additional crimes that might be considered the natural and probable consequences of that crime." *Lopez-Minjarez*, 260 P.3d at 443. But the pattern jury instruction goes beyond that statement of Oregon law and criminalizes additional conduct. *Id.* "In effect, the instruction tells a jury that, once it finds liability based on an aiding and abetting theory, it can find a defendant guilty of any *other* crimes that the jury finds to be the natural and probable consequence of the crime for which there was accomplice liability." *Id.* The Oregon Supreme Court held that the trial court in that case erroneously provided the natural and probable consequence instruction because it contradicted the plain text of Oregon's accomplice liability statute. *Id.*

The Oregon Supreme Court also emphasized that "[t]he fact that the erroneous instruction is part of the Uniform Criminal Jury Instructions, of course, is inconsequential in the analysis." *Id.* at 443 n.4. It noted that pattern jury instructions are not law; they are "a salutary effort on the part of legal practitioners in Oregon to state the law in a correct way that is helpful to jurors." *Id.* Yet, as the court noted, "that effort does not always succeed." *Id.* Indeed, the Oregon Supreme Court held that the plain text of Oregon's accomplice liability statute never permitted convictions based on mere negligence, which the natural and probable consequences

14

instruction could allow. *Id.* at 447; *see also* Wayne R. LaFave, Foreseeability of other crimes, 2 Substantive Criminal Law § 13.3(b) (3d ed.) (noting that the "'natural and probable consequence' rule of accomplice liability . . . would permit liability to be predicated upon negligence even when the crime involved requires a different state of mind").

In practice, some courts may have been using the erroneous jury instruction at the time Mr. Wiggins was convicted in 2008. However, the fact that some defendants may have been erroneously convicted under the natural and probable consequences jury instruction in 2008 does not mean that the flawed jury instruction defines what Oregon *law* required to convict a defendant as an accomplice at the time of Mr. Wiggins's conviction.[2] Precedent instructs us to determine the minimum conduct that the relevant statutes and associated case law criminalized at the time of Mr. Wiggins's conviction, not whether an individual may have been convicted contrary to that law. *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (explaining that the first step in determining whether a state statute was a crime of violence is determining "what the state conviction necessarily involved"); *Johnson v.*

---

[2] Nor is there anything in the record supporting a conclusion that Mr. Wiggins's jury was, in fact, given the erroneous instruction. Although the pattern instructions are in the record, the instructions given at Mr. Wiggins's 2008 trial are not. To be sure, if such an instruction had been given, Mr. Wiggins may have, or have had, a claim for ineffective assistance of counsel. But that would constitute a challenge to his state conviction, which is not relevant to this appeal of his federal sentence after commission of a new crime. *United States v. Garcia*, 42 F.3d 573, 574 (10th Cir. 1994) (holding that a defendant "cannot collaterally attack a predicate conviction under U.S.S.G. § 4B1.1 in a federal sentencing proceeding").

*United States*, 559 U.S. 133, 138 (2010) (stating that a state's highest court's interpretation of state law binds federal courts for the crime-of-violence inquiry).

Even before *Lopez-Minjarez*, the Oregon Court of Appeals held that Oregon law did not permit accomplice liability "predicated on a coconspirator's commission of a *separate crime* to which the defendant is in no way tied, except that the crime occurred during the course of the common criminal episode." *State v. Anlauf*, 995 P.2d 547, 550 (Or. Ct. App. 2000). Although *Anlauf* did not expressly refer to the pattern jury instruction Mr. Wiggins invokes, it rejected the notion that "all acts by any of the conspirators are, *ipso facto*, natural and probable consequences of the unlawful combination or undertaking." *Id.*

Indeed, after *Anlauf*, the Oregon Court of Appeals has repeatedly held that the failure to object to the natural and probable consequences jury instruction constitutes ineffective assistance of counsel. For example, in *Walraven v. Premo*, 372 P.3d 1 (Or. Ct. App. 2016), the Oregon Court of Appeals found that "trial counsel's failure to object to the 'natural and probable consequences' instruction was not a reasonable exercise of professional skill" in a trial that happened just six months after the appellate court decided *Anlauf*. 372 P.3d at 12. The court explained that *Anlauf* sufficiently informed the defendant's trial counsel that Oregon statutes and case law did not support the theory on which the pattern jury instruction relied—"that a defendant who participates in one crime is necessarily responsible as an accomplice for other crimes that were the natural and probable consequences of the intended predicate crime." *Id.*

16

The Oregon Court of Appeals reached the same decision in *Lizarraga-Regalado v. Premo*, 390 P.3d 1079 (Or. Ct. App. 2017), which also involved a trial that happened only six months after the *Anlauf* decision. In *Lizarraga-Regalado*, the court specifically rejected the argument that defense counsel would not have known the natural and probable consequences instruction was erroneous until the Oregon Supreme Court issued *Lopez-Minjarez* in 2011. *Lizarraga-Regalado*, 390 P.3d at 1084. Rather, the court noted that, after *Anlauf*, "it was incumbent on counsel to investigate whether, or to what extent, the 'natural and probable consequences' instruction on which the state's theory depended comported with the existing law of accomplice liability." *Id.* And, as the Court of Appeals explained in another case reaching the same conclusion, that investigation "would result in discovery of the *Anlauf* decision," which would lead any lawyer exercising reasonable professional skill and judgment to object to the natural and probable consequences instruction. *Wade,* 342 P.3d at 151–52.

Mr. Wiggins asks us to conclude that the natural and probable consequences jury instruction represented the law in Oregon at the time of his conviction because some courts were still using it to instruct juries in 2008. But the Oregon Court of Appeals decisions described above confirm that not only was the instruction inaccurate, but that, starting in 2000, any lawyer exercising reasonable "professional skill and judgment" would have discovered that it did not correctly state the mens rea that Oregon statutes and case law required to prove accomplice liability under Oregon law. *See id.* at 151.

17

Each of the cases on which Mr. Wiggins relies involved convictions that happened before the Oregon Court of Appeals decided *Anlauf* in 2000. *See Tristan*, 2018 WL 3117637, at *8 (noting the defendant being sentenced pleaded guilty in 1994); *Hale v. Belleque*, 298 P.3d 596, 618 (Or. Ct. App. 2013) (describing a 1998 trial); *State v. Gibson*, 448 P.2d 534, 536–37 (Or. 1968). Those cases are distinguishable because, before *Anlauf*, courts declined to conclude that a defendant's trial counsel was ineffective based on counsel's failure to object to the natural and probable consequences jury instruction. As the Oregon Court of Appeals noted in 2015, trial counsel would not have been "alerted to the fact that the instruction was legally flawed" until the 2000 *Anlauf* decision. *Eklof v. Steward*, 359 P.3d 570, 572 n.2 (Or. Ct. App. 2015), *rev'd on other grounds*, 385 P.3d 1074 (Or. 2016); *see also Lizarraga-Regalado*, 390 P.3d at 1084 n.7 (collecting cases involving pre-2000 convictions where the court held trial counsel was not ineffective for failing to object to the natural and probable consequences pattern jury instruction).

Mr. Wiggins asserts that *Hale*, one of the cases involving a pre-*Anlauf* trial, shows that the natural and probable consequences instruction *was* "a correct statement of the law" at the time of Mr. Wiggins's conviction in 2008. Appellant's Br. at 17 (quoting *Hale*, 298 P.3d at 618). True, *Hale* referred to a 1968 Oregon Supreme Court case that described the pattern instruction as "a correct statement of the law." *Hale*, 298 P.3d at 618 (quoting *State v. Gibson*, 448 P.2d 534, 537 (Or. 1968)). But the Oregon Supreme Court in *Gibson* did not go so far as to hold that the instruction correctly described the elements of accomplice liability under Oregon

18

law. It held only that when understood in the context of *that particular case*, "the instruction was a correct statement of law." *Gibson*, 448 P.2d at 537. It also noted that "[t]he challenged instruction was virtually meaningless" under the specific facts of the case and did not prejudice the defendant.[3] *Id.* Nothing in the opinion addresses whether the pattern jury instruction correctly permitted accomplice liability based on negligent conduct alone.

When Mr. Wiggins was convicted in 2008, the natural and probable consequences jury instruction was not a correct statement of Oregon law. It conflicted with the plain text of Oregon's accomplice liability statute, and trial counsel exercising reasonable skill would have discovered this conflict and objected to the instruction. Accordingly, we are not persuaded that the Oregon assault statute as correctly interpreted would have permitted a conviction for negligent conduct at the time of Mr. Wiggins's Oregon assault conviction. As a result, Mr. Wiggins's accomplice liability argument fails to disqualify his second-degree assault conviction

---

[3] There was never any question in *Gibson* that the defendant was more than merely an accomplice. As the Oregon Supreme Court noted:

> The evidence as a whole left little doubt that two predators had followed a chosen victim out of a tavern and had beaten him almost to death. Whether by preconceived design or not, one of them had absconded with the contents of the victim's wallet. If the two defendants were in fact acting in concert, it would make no difference which one actually took the money.

*State v. Gibson,* 448 P.2d 534, 537 (Or. 1968).

as a crime of violence, irrespective of whether the statute is divisible. And that crime of violence combined with his prior drug offense qualified him as a career offender.

We therefore need not consider whether Mr. Wiggins's 2008 first-degree robbery conviction under Oregon law was also a crime of violence under U.S.S.G. § 4B1.1.[4]

## IV.    CONCLUSION

We AFFIRM the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[4] Because Mr. Wiggins's argument on appeal is limited to his assertion that he could have been convicted as an accomplice in 2008 on proof of mere negligence, we also need not address his alternative argument that the available documents do not establish the theory under which he was convicted.